**People of the State of Illinois, Plaintiff-Appellee, v. Frederick Piesen, Defendant-Appellant.**

**Gen. No. 52,878.**

First District, Fourth Division.

October 8, 1969.

373

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

No brief for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED
Burglary. Ill Rev Stats (1965), c 38, § 19–1.

JUDGMENT
After a bench trial, defendant was found guilty of burglary and sentenced to a term of 2 to 8 years.

POINTS RAISED ON APPEAL
(1) Defendant did not knowingly waive his right to a jury trial.
(2) As a result of intoxication, defendant, at the time of the commission of the offense, did not possess the requisite intent to commit burglary.

EVIDENCE
Manuel Robles, for the State:
On the evening of September 3, 1967, he was asleep in his home when he was awakened by the sound of change (coins). He looked up to see the defendant standing next to his bed with witness' pants in defendant's hands. Defendant immediately ran, but he grabbed him and yelled for help. His brother and sister-in-law, who live in the same building, came to his aid. He smelled alcohol on defendant's breath, but defendant wasn't drunk.

Adeline Robles, for the State:
She was awakened at 11:20 p. m. when she heard her brother-in-law yelling for help. Her husband turned on the light and she saw defendant, who was struggling to

get away, being held by her brother-in-law. When the police came, defendant walked into the kitchen where police questioned him.

She was four or five feet from defendant, but did not smell any alcohol on his breath. While they were waiting for the police, defendant pleaded with her brother-in-law to let him go, since he had only attempted to get some money for his baby.

Martin Robles, for the State:

He smelled liquor on defendant's breath, but he wasn't drunk.

Andrew Giacalone, for the State:

He is a police officer and was assigned to cover the incident in question. When he arrived, two officers were already present, holding defendant. He observed that the door was open and the kitchen window was broken.

Defendant had an odor of alcohol, but appeared to witness to walk "all right," "like any normal person would walk," and responded coherently when questioned by witness.

Defendant, on his own behalf:

During the day and a half prior to the occurrence in question, he had consumed much wine, beer and whiskey, in addition to receiving a shot of morphine. Later that evening, someone had attempted to rob him in an alley and he struggled to get away, running to three different houses seeking help. He knocked on the Robles' door but no one answered, so he tried the doorknob and walked in. He bumped into a chair, knocking some pants onto the floor, and, when he picked them up to replace them, Manuel Robles awakened.

He didn't enter to commit a theft. He was terribly drunk, and stumbled to the floor when he was trying to escape from Robles. He denied telling anyone that he had been trying to get money for his baby.

OPINION

Defendant's first contention is that he did not understandingly waive his constitutional right to trial by jury, as codified in Ill Rev Stats (1967), c 38, § 103-6. When the case was called for trial, defendant and his attorney (Asst. Public Defender Toole) were present in court. The following colloquy took place:

> MR. TOOLE: "Mr. Piesen wants a bench trial, Judge."
> THE COURT: "Is that correct?"
> THE DEFENDANT: "Yes."
> THE COURT: "You understand that you have a right to a jury trial, Mr. Piesen?"
> THE DEFENDANT: "Yes."
> THE COURT: "You are waiving that right, sir, and you wish to be tried by this court?"
> THE DEFENDANT: "Yes, sir."
> THE COURT: "Will you please indicate that by signing a jury waiver?"
> MR. TOOLE: "For the record I am tendering to the court a jury waiver signed by Mr. Piesen."

Thus, the trial judge had directed the question of jury waiver to defendant himself, after his attorney had made a request for waiver. Defendant responded to the court, both orally and in writing, that he wished to waive his right to a jury trial.[*]

---

[*] We take notice also of the stipulation in evidence as to defendant's prior criminal record which is sufficiently lengthy to indicate that he was very probably not ignorant of judicial procedures. His convictions were:

1949, three counts of burglary, plea of guilty, sentence of 1 to 2 years.

1952, two counts of burglary, plea of guilty, sentence of 1 to 5 years.

1956, larceny, sentence of 1 year.

1958, larceny, sentence of 6 months.

It is the trial judge's responsibility to insure that the waiver of a jury trial is knowingly and understandingly made. E. g., People v. Wesley, 30 Ill2d 131, 195 NE2d 708. Whether a waiver has been knowingly and understandingly made depends upon the facts and circumstances of each case, and there can be no precise formula for determining the issue. People v. Palmer, 27 Ill2d 311, 189 NE2d 265. Here, the judge received affirmative responses to his direct questions concerning waiver. We believe that the circumstances surrounding the waiver in this case demonstrate that it was knowingly made.

Defendant cites several cases in his brief for the proposition that some explanation concerning the nature of a jury trial should be conveyed to a defendant before he can be said to waive his right knowingly, citing People v. Turner, 80 Ill App2d 146, 225 NE2d 65; and People v. Bell, 104 Ill App2d 479, 244 NE2d 321. Both of these cases are factually distinguishable, and do not alter our conclusion that the record in the instant case shows that the jury waiver was made knowingly.

Defendant's second contention is that at the time of the commission of the offense, he did not possess the requisite intent to commit burglary. We have reviewed defendant's account of his lengthy drinking escapade preceding his entry into the Robles' home. We also note the reports of two doctors from the Behaviour Clinic which indicate that defendant (who was 38 years of age at the time), had been drinking since age 10 and to excess since age 22.

This evidence must be evaluated in light of the statutory provision concerning criminal responsibility, contained in Ill Rev Stats (1967), c 38, § 6-3, which is as follows:

> A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition . . . :

> (a) Negatives the existence of a mental state which is an element of the offense . . .

The offense of burglary, as pertinent to the instant case, requires a knowing entry with intent to commit theft. Defendant's claim is that his excess consumption of alcohol and the injection of morphine negatived the requisite mental state.

The trial court explicitly rejected defendant's contention by stating in an oral opinion immediately before rendering his decision:

> I would point out that the defendant's precise recollection of the incident would certainly not indicate any mental state that would negate the necessary mental condition. I would note, also, that the actions of the defendant in running away and pleading to be let go at the particular time would belie the suggestion of an involuntary action or irresistible impulse caused by intoxication or otherwise.

██ We concur in this rationale. Even though defendant had been drinking, all the witnesses who came in contact with him that evening testified either that he was not drunk or that he conducted himself as a normal person would. These opinions are corroborated by defendant's own testimony, which was lucid with respect to the sequence of events during the evening in question. Defendant's intoxication was not "so extreme as to suspend entirely the power of reason and render the accused incapable of any mental action." People v. Winters, 29 Ill2d 74, 193 NE2d 809. We find, therefore, that defendant did possess the requisite intent to commit the burglary, and his conviction is accordingly affirmed.

Affirmed.

DRUCKER, P. J. and McNAMARA, J., concur.