People of the State of Illinois, Plaintiff-Appellee, v. Quitman Dotson, Hubert Conley, and William Page, a/k/a William Pace, Defendants-Appellants.

Gen. No. 53,869.

First District, Second Division.

May 19, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Robert B. McGee, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

In a trial by the court without a jury, the defendants, Quitman Dotson, Hubert Conley and William Page, a/k/a William Pace, were found guilty of robbery (Ill Rev Stats (1967), c 38, § 18-1(a)). After judgments were entered and their oral motions for a new trial and in arrest of judgment were denied, the defendants were each sen-

tenced to two to ten years in the State Penitentiary. In this their joint appeal, they contend that: (1) their jury waivers were not knowingly and understandingly made in open court; and (2) they were not convicted beyond a reasonable doubt due to the conflicting testimony of the complaining witnesses.

Testifying for the State were the two complaining witnesses, Mrs. Jean Breuer and Mr. Gerald Galvin, and one of the arresting officers, Detective Sheldon Green. The three defendants testified in their own behalf.

Mrs. Breuer, a widow, stated that she met Mr. Galvin, whom she had known for two or three months, in a tavern in Chicago at approximately 11:30 p. m. on October 11, 1967; that she went to this establishment directly from her apartment; that she and Galvin drank together for two hours interrupted only by his intermittent trips to the bowling machine; that she never drinks whiskey but Galvin bought her one beer and she purchased one for herself before she and Galvin left together at approximately 1:30 a. m., as he was going to walk her home. Mrs. Breuer went on to state that as she and Galvin were going into the vestibule of her apartment building, three yelling men ran in behind them, one of them seized her purse, struck her in the eye and forehead causing her to fall, and ran back to a station wagon with her purse. He then returned to the vestibule, participated in beating Galvin with the other two men, and thereafter began dragging Mrs. Breuer, by her feet, to the station wagon saying that they should rape her. The other men said no and all three then fled in the vehicle. Mrs. Breuer identified Dotson in the courtroom as being the man who dragged her toward the station wagon and thought that Conley was also involved, but could not be positive.

Continuing, Mrs. Breuer testified that the police arrived on the scene approximately five minutes after the offense had occurred and shortly thereafter she and Gal-

386

vin were taken a distance of two or three blocks to view three men sitting in a police car; that she there identified one of the men, Dotson, as being her assailant; and that her purse was returned to her later in the police station. In conclusion, Mrs. Breuer denied ever standing on a corner with Galvin on October 12, 1967, and asking for a ride home or engaging in an argument with any men on that night or seeing Galvin fighting with any men in an automobile on the night in question or ever vomiting on anyone in an auto that evening.

The other complaining witness, Gerald Galvin, testified that he and Mrs. Breuer had visited two taverns on the night in question; that they spent about one hour in the first tavern, with each drinking three small bottles of beer bought by Galvin, and thirty to forty-five minutes in the second tavern, where he had two more small bottles of beer and did not know if Mrs. Breuer had any more beer to drink. He denied that he and Mrs. Breuer were intoxicated as they left the second tavern and walked to her apartment. Regarding the robbery, Galvin testified that the incident took about five minutes; that he was holding open the door to the apartment building for the three men who were entering the vestibule behind him and Mrs. Breuer, thinking they were tenants of the building, when one of them struck Galvin with a fist knocking him to the floor of the vestibule. Two more men thereafter participated in beating him and one of them dragged Mrs. Breuer out of the hallway or vestibule. Galvin's wallet, which contained seven dollars, was taken from him, and the robbers escaped in a 1959 or 1960 black Chevrolet station wagon.

Approximately ten minutes later, the police took him and Mrs. Breuer to look at the occupants of a black Chevrolet station wagon which had been stopped about three blocks from the scene of the robbery. Galvin testified that he identified Dotson and Conley at that time as

two of the robbers and saw Mrs. Breuer's purse lying on the floor of the station wagon. The police opened the purse and found Galvin's wallet therein but his money was missing. After making in-court identifications of Dotson and Conley as two of the robbers, Galvin went on to state that he did nothing in the two taverns on the night in question but sit at the bar and that he never asked anyone for a ride in their car nor fought or argued with anyone that evening, nor did Mrs. Breuer vomit on the night in question.

One of the arresting officers, Detective Green, stated that he and his partner talked with Mrs. Breuer and Galvin shortly after the robbery and they left the scene after receiving a description of three white males and being told the robbers left in a black 1960 Chevrolet station wagon; that five or ten minutes later this witness and his partner stopped such a vehicle about two or three blocks from the scene of the robbery and saw that three men were in the car. Detective Green identified the three defendants in the courtroom as being the occupants of the vehicle on the morning in question and stated that the police found a woman's purse lying on the front floor of the station wagon. A man's wallet was inside the purse. Although Detective Green testified that he detected the odor of alcohol when he spoke with Mrs. Breuer and Galvin in the police station later that morning, he denied that they were intoxicated.

All three defendants testified and stated that they had been drinking on October 11, 1967; that Dotson and Page had met each other at 9 a. m. on October 11, 1967, and had spent the rest of the day drinking together, meeting Conley at 9 p. m. and thereafter drinking with him; that at approximately 1 a. m. on October 12, 1967, Page was driving the other two defendants home when Mrs. Breuer staggered in front of Page's station wagon and was pulled back by her companion, Mr. Galvin; that Gal-

vin asked Page for a ride to Mrs. Breuer's apartment, Page agreed, and they got into the back seat of the station wagon with Dotson, as Conley was in front with Page.

During the ride home, Mrs. Breuer allegedly vomited on Dotson who then pushed her into Galvin. The car stopped in front of her apartment building, Mrs. Breuer and Galvin left the car, but Galvin pulled Dotson out and started to punch him. A fight ensued between Galvin and the three defendants lasting for five minutes and going from the sidewalk into the vestibule of the building before the defendants left. All three defendants denied that they had robbed either Mrs. Breuer or Galvin.

Dotson admitted that the police found a purse on the floor of the station wagon, but Page stated that he never saw it there while he was driving the vehicle. Dotson also testified that a man's wallet was found in Conley's pocket. Conley stated that his pants pocket was torn during the fight which caused his keys and cigarette lighter to fall out. After the fight had ended, he saw these items, along with a wallet, lying on the ground outside the apartment building. He picked up everything and put it in his pockets, thinking these articles were his property. When the police stopped him, he noticed for the first time that he had two billfolds. After he identified his wallet, the police put the other one in the purse and took the defendants to the police station.

In rebuttal, the State introduced authenticated documentary evidence showing that in 1959 Conley had been convicted of robbery in Cook County and in 1961 Page had been convicted of burglary in Tennessee.

Regarding the jury waiver issue, the record reflects the following colloquy between the court, the defendants and their counsels:

Court: "Is this a bench or jury?"
Defense Counsel: "Bench trial, Judge. Let the record show that my clients have

389

█

| | |
|---|---|
| | stated that they categorically wish to be tried by the Court and wish to waive their right to a jury trial." |
| Court: | "You understand you have a right to a jury trial, sir?" |
| Defendant Dotson: | "Yes, sir." |
| Court: | "Mr. Conley?" |
| Defendant Conley: | "Yes, sir." |
| Court: | "Mr. Page?" |
| Defendant Page: | "Yes, sir." |
| Court: | "Is it the desire of each of you, as your counsel indicated, to waive that right and be tried by this Court without a jury? Mr. Dotson?" |
| Defendant Dotson: | "Yes, sir." |
| Court: | "Mr. Conley?" |
| Defendant Conley: | "Yes, sir." |
| Court: | "Mr. Page?" |
| Defendant Page: | "Yes, sir." |
| Court: | "Please sign the jury waivers then gentlemen." |

(The common-law record contains the jury waivers signed by each of the defendants.)

█ It is the position of counsel for the defendants on appeal that due to the alleged failure of the trial court to fully explain the meaning and function of a jury trial, the defendants did not understandingly waive their right as required by the Code of Criminal Procedure (Ill Rev Stats (1967), c 38, § 103–6). We hold that the circumstances surrounding the jury waivers in the case at bar clearly demonstrate that they were knowingly made. People v. Piesen, 115 Ill App2d 373, 253 NE2d 16 (1969); People v. Collins, 112 Ill App2d 458, 251 NE2d 325 (1969). The defendants, by their responses to the ques-

tions posed to them by the trial court, did not indicate that they failed to understand the words "waiver" and "jury" as they are commonly understood. People v. Spencer, 115 Ill App2d 398, 253 NE2d 672 (1969). Their desire for a nonjury trial was clear, unequivocal, and in accordance with the representation made to the trial court by their counsel. Two of the three defendants, Conley and Page, had prior felony convictions. A pretrial investigation report contained in the instant record also shows that Dotson was no stranger to criminal proceedings having been convicted of a misdemeanor and sentenced to eight months at the Illinois State Farm. Under these circumstances, it would be unrealistic for this court to hold that the jury waivers were not understandingly made by the defendants.

■■ Secondly, the defendants contend that the State failed to prove them guilty beyond a reasonable doubt due to the inconsistencies in the testimony of the two complaining witnesses as contrasted with the uniform testimony presented by the three defendants. The testimony of the complaining witnesses—although conflicting on two immaterial and irrelevant events occurring before the offense, i. e., how many taverns they had visited on the night in question and whether or not Galvin played the bowling machine—was consistent as to the facts of the robbery. As presented to the trial court, this case did not involve any issue of identification. Mrs. Breuer and Galvin stated that three men were involved in the crime and they fled in a station wagon; Galvin identified Conley and Dotson as two of the assailants and Mrs. Breuer pointed out Dotson also; the three defendants were apprehended in a vehicle described by the two complaining witnesses to the police shortly after Mrs. Breuer and Galvin had made a prompt complaint to the officers; at trial, the accused admitted meeting the complaining witnesses on the night in question, and Page stated

that he was the driver of the vehicle. In essence, the trial court had presented to it the simple and sole issue of credibility. On the one hand, the complaining witnesses implicated the three defendants as the aggressors and, on the other hand, the accuseds stated that Galvin, one of the complaining witnesses, was the aggressor. Which testimony to believe was for the trial court as the trier of fact in this nonjury case.

 Parenthetically, we note that the weight to be given to the testimony of the defendants was weakened by the fact that Mrs. Breuer's purse was found, within a short time after the offense had occurred and only three blocks from the robbery scene, on the floor of the front seat of the station wagon driven by Page and occupied also by Dotson and Conley. The testimony of the defendants was that she had occupied only the back seat of the vehicle with her companion, Galvin and Conley. Furthermore, the State's evidence, if believed, was that the wallet taken from Galvin was found in the station wagon and inside Mrs. Breuer's purse. The three defendants chose to testify in their own behalf, and the credibility of two of them, Conley and Page, was impeached by their prior convictions of infamous crimes, robbery and burglary respectively. People v. Halkens, 386 Ill 167, 53 NE2d 923 (1944) ; People v. Ladas, 12 Ill 2d 290, 146 NE2d 57 (1957).

Apparently, defense counsel relies upon the inconsistency in the testimony of the complaining witnesses relating to events preceding the offense to support his position that, because of their intoxication, their testimony as to the subsequent robbery was improbable, unsatisfactory, and not to be believed. We do not agree. One of the arresting officers, Detective Green, testified that the complaining witnesses were not intoxicated when he spoke with them in the police station shortly after the defendants had been arrested. Furthermore, their testi-

mony as to the robbery was corroborated by the fact that Mrs. Breuer's purse and Galvin's wallet were found soon thereafter in the station wagon used by the three robbers to flee the scene of the offense. The defendants were the sole occupants of that vehicle. We hold that the defendants were proved guilty beyond a reasonable doubt. People v. Young, 24 Ill2d 578, 182 NE2d 734 (1962) ; People v. Plodzien, 104 Ill App2d 336, 244 NE2d 343 (1968).

█ During oral argument, counsel for the defendants asked that Dotson's sentence be reduced because he had no prior felony convictions but he had received the same sentence—two to ten years in the State Penitentiary—as his two coindictees, Conley and Page, who did have prior felony convictions. This contention was not raised in the brief of the defendants filed in this court. In our opinion, the sentence given to Dotson was proper. The evidence showed that he was an active participant in a crime involving violence and that he had, after striking Mrs. Breuer and taking her purse, started to drag her to the station wagon telling the other two defendants that they should all rape her. The minimum sentence of two years is proper punishment for such an offense, and the maximum sentence of ten years is long enough to hopefully provide for Dotson's rehabilitation in conjunction with the Parole Board. The robbery statute (Ill Rev Stats (1967), c 38, § 18–1) provides for imprisonment in the penitentiary for one to twenty years. The sentence in this case is within the statutory limits, and we conclude that it is not improper. People v. Taylor, 33 Ill2d 417, 424, 211 NE2d 673, 677 (1965).

The judgments are affirmed.

Judgments affirmed.

McCORMICK, P. J. and BURKE, J., concur.