**UNITED STATES of America,**
**Appellee,**

v.

**Donald Elvin FOUNTAIN, Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**Gordon Alva LANGFORD, Appellant.**

**Nos. 71–1071, 71–1166.**

United States Court of Appeals,
Eighth Circuit.

Sept. 28, 1971.

Tom Lehnert, Rapid City, S. D., for Donald Elvin Fountain.

Robert A. Warder, Rapid City, S. D., for Gordon Alva Langford.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., Richard D. Hurd, David R. Gienapp, Asst. U. S. Attys., for appellee.

Before LAY, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Defendants Donald Elvin Fountain and Gordon Alva Langford, after a joint trial, were found guilty by a jury of transporting a kidnapped victim and a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 1201 and 18 U.S.C. § 2312. The district court sentenced Fountain to life imprisonment on the kidnapping charge and five years on the motor vehicle transportation charge, both sentences to be served concurrently. Langford received thirty years on the kidnapping charge and five years on the motor vehicle transportation charge, both to run concurrently. Defendants prosecute this timely appeal in forma pauperis.

Appellants, both jointly and separately, raise a plethora of contentions on appeal, seeking reversal based on alleged erroneous rulings on the admissibility of evidence, improper instructions submitted to the jury, and other errors committed

by the trial court either preceding, during or after the trial. We have carefully reviewed all claims of error and have evaluated them against a background of testimony and evidence which establishes, without any real peradventure of doubt, that the defendants committed the crimes charged in the indictment. We have found no prejudicial error in the conduct of any of the proceedings, and we therefore sustain the convictions.

We first turn to a consideration of the facts. Fountain and Langford, along with a third defendant, Ronald James Brooks, who earlier pleaded guilty to similar charges, confronted the victim, Ronald Hatcher, who was working as a station attendant at a service station near Modale, Iowa, near midnight on April 22, 1970. The three had arrived in a stolen pickup van which had stalled near the service station in which Hatcher was working. Langford went to the service station and asked Hatcher for a knife to help get the van started. A short time later Fountain and Brooks entered the station and requested a flashlight. Subsequently, all three entered the service station with Brooks wielding the knife. Without warning, Brooks slashed Hatcher across his throat and stabbed him in the abdomen. The three then took the money from the service station cash drawer and relieved Hatcher of his wallet. They then forced Hatcher to accompany them in Hatcher's own automobile which had been parked at the service station. A wild ride at high speeds ensued from Iowa on into western South Dakota. All three alternated in driving, keeping Hatcher under constant threat of bodily harm by use of the knife, which, at one time or another, each had possessed. The trip was punctuated by stops for purchases of gasoline and beer. Large quantities of beer were consumed while en route. In the early morning hours of April 23, shortly after daybreak, the group stopped at an isolated point on a country highway near New Underwood, South Dakota. Hatcher was taken out of the car and severely beaten and kicked by Brooks and Fountain. Fountain, then in possession of the knife, slashed the victim's throat and left him as though dead, lying in a snowbank on the side of the highway. The three got into the car and, with Langford at the wheel, left the scene.

Hatcher was rescued about 8:00 a. m. on April 23, 1970. He had been able to make his way to the nearby highway when he heard the engine noise of an approaching highway road grader. The road grader operator took Hatcher to a nearby farmhouse where, though still in a dazed and weakened physical condition, he related what had transpired to those present at the farmhouse. He also furnished them with a description of his automobile. South Dakota law enforcement authorities were notified soon thereafter, and they apprehended the defendants at Sturgis, South Dakota, a few hours later.

■ We turn first to the evidentiary problem. Fountain claims that testimony as to Hatcher's statements immediately following his rescue, as related by witnesses to those statements, constituted inadmissible hearsay. We disagree. The record indicates a basis for admission of these conversations as a statement made by a declarant while under the stress of excitement caused by an event or condition. Such evidence may be admitted as an exception to the hearsay rule. See generally McCormick, Law of Evidence § 272, pp. 578–84. Cf. Roberts v. United States, 332 F.2d 892 (8th Cir.), cert. denied, 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274 (1964). This exception is enunciated and discussed in the Preliminary Draft of the Rules of Evidence for the United States District Courts and Magistrates as Rule 8–03(b) (2). We perceive no error in the district court's ruling admitting this testimony. Assuming arguendo the foundation for admission inadequate, we fail to see how those statements prejudiced either defendant in any way. The substance of Hatcher's oral testimony given at

trial completely corroborated his out-of-court conversations, as reported by the other witnesses.

■ Fountain also contends that the introduction of evidence showing that Hatcher sustained severe injuries at the hands of the kidnappers prejudiced his obtaining a fair trial. His argument is predicated on United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), in which the court declared unconstitutional that part of the interstate kidnapping statute which permitted only a jury to assess a death penalty against a defendant "if the kidnapped person has not been liberated unharmed. * * *," However, nothing in the *Jackson* opinion suggests that evidence of harm becomes irrelevant in proving the commission of the crime of kidnapping. The jury arguments presented by counsel for both defendants demonstrate the fallacy of Fountain's position. Fountain's attorney argued for acquittal on the basis that the prosecution had failed to demonstrate that his client intended to commit the crime since Fountain was shown to be intoxicated. Langford, in addition to intoxication, claimed he possessed no intent to commit the crime, but was coerced into going along by the other two defendants as a somewhat unwilling accomplice. Obviously, under those circumstances, testimony describing the actions and conduct of each of the participants bore upon the issue of intent.

Both appellants contend that the trial court erred in its instructions to the jury. We shall briefly consider this contention. Appellants charge that the district court confused the jury by failing to differentiate the elements relating to the crime of kidnapping and those relating to the crime of interstate transportation of a motor vehicle and additionally erred in explaining the aspect of intent as it related to each crime. The record reflects that neither appellant preserved any exception to the instructions, as is required by Rule 30, Fed.R.Crim.P.

Counsel neither requested curative instructions nor did they voice any objections to the instructions as given to the jury. Appellants now make vague and unclear allegations of erroneous instructions by taking parts of the court's instructions out of context. We have reviewed the instructions as a whole and find them proper.

■ We now turn to the claims of error that rest on pretrial motions. Both defendants claim error in the trial court's refusal to sever their joint trial. Both cite the Supreme Court decision in Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968), which requires a separate trial under circumstances where the " * * * powerfully incriminating extrajudicial statements of a codefendant * * * " [391 U.S. at 135, 88 S.Ct. at 1628] will be deliberately spread before the jury in the event of a joint trial.

In the present case, unlike *Bruton*, the government introduced confessions from both defendants and, in addition, one of them, Langford, actually testified in his own behalf. The decision in *Bruton* rested upon a record which established that petitioner Bruton had been prejudicially deprived of his Sixth Amendment right of confrontation in the joint trial, an error which could not be cured by instructions from the trial court. Fountain's reliance on *Bruton* is misplaced. Here, Langford's conduct in taking the stand afforded Fountain the opportunity to cross-examine him on the substance of the latter's out-of-court confession. In a comment on the *Bruton* rule, the Supreme Court, in Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed. 222 (1971), said:

It was clear in *Bruton* that the "confrontation" guaranteed by the Sixth and Fourteenth Amendments is confrontation *at trial*—that is, that the absence of the defendant at the time the codefendant allegedly made the out-of-court statement is immaterial, so long as the declarant can be cross-

examined on the witness stand at trial.

\* \* \* \* \* \*

[W]here a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant was denied no rights protected by the Sixth and Fourteenth Amendments. [402 U.S. at \* \* \*, 91 S. Ct. at 1726–1727]

Moreover, the discussion in *Nelson* makes it clear by reference to California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), that it is immaterial whether the codefendant taking the stand testifies favorably or unfavorably to the contentions of other defendants concerning the underlying facts.

Accordingly, we hold that Fountain does not demonstrate any error through the introduction of his codefendant's confession, when the codefendant has taken the witness stand. See also United States v. Cale, 418 F.2d 897 (6th Cir. 1969), cert. denied, 397 U.S. 1015, 90 S. Ct. 1250, 25 L.Ed.2d 430 (1970).

■ In the context of the record, Langford's contention that he was entitled to a separate trial because of the introduction of Fountain's confession, which implicated Langford in the commission of the crime, in our judgment, is frivolous in this case. Langford made no objection to the reception of this evidence. Prior to trial, he had moved for a separate trial and supported this motion with an affidavit reciting that at a separate trial Fountain could be called to the stand as Langford's witness. The introduction of Fountain's confession afforded Langford the benefit of that testimony, although as indirect rather than direct testimony. Indeed, the Fountain confession corroborated Langford's own assertions that he had not harmed Hatcher and that all acts of violence had been committed by Brooks and Fountain. Contrary to Langford's contention, the

principles of *Bruton* do not mandate a mistrial in every instance that a prosecution introduces a confession of a codefendant in a joint trial. Those principles must be applied with practicality and common sense. Davis v. Sigler, 415 F. 2d 1159, 1163 (8th Cir. 1969); Slawek v. United States, 413 F.2d 957 (8th Cir. 1969). We can see no prejudice whatsoever to Langford from the admission of Fountain's confession. We hold *Bruton* inapplicable to these facts. See and compare Dutton v. Evans, 400 U.S. 74, 86–87, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); United States ex rel. Catanzaro v. Mancusi, 404 F.2d 296, 300 (2d Cir. 1968), cert. denied, 397 U.S. 942, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970).

■ Fountain also claims he should have had additional time to prepare for trial, particularly since he did not receive a copy of a report from a government psychiatrist (which indicated that Fountain was competent and responsible for his actions) until the day scheduled for the trial. The record discloses that Fountain was afforded the services of his own psychiatrist and that his counsel had been given more than two months to prepare for trial. Fountain did not claim the defense of insanity or offer any testimony from his own psychiatrist. Under these circumstances, we find no error shown by appellant Fountain. See United States v. Briddle, 443 F.2d 443 (8th Cir. 1971).

■ Langford, too, presents a contention resting upon pretrial proceedings. At a pretrial hearing held July 29, 1970, on a motion to suppress Langford's confession, he made a casual statement that he had undergone treatment at a California mental hospital some two or three years earlier for "suicidal tendencies and alcoholism." The court inquired further and established that Langford's hospitalization was voluntary, had lasted only one week, and that he suffered no "mental difficulties" thereafter.

On this record, Langford contends that the trial court committed plain error in not ordering him to undergo a psychiat-

ric examination. We consider this issue, too, as being without merit. 18 U.S.C. § 4244 authorizes a psychiatric examination where there is reasonable cause to believe an accused is insane or mentally incompetent to understand the proceedings against him. No such cause or belief appears in this record.

■■ Lastly, we turn to the appellants' contention of prosecutorial misconduct in calling a Deputy United States Marshal who was serving as bailiff for the jury to testify during the trial. We note initially that no objection was made to this witness taking the stand. Additionally, the Deputy Marshal testified only to the chain of custody of certain of the defendant's clothing which had at one point been in his possession. Some of these items were introduced as exhibits in the case. While we might agree that ordinarily the bailiff should not be called to testify in a case, the fact that such an event occurred in a trial does not establish prejudicial error per se. See Gonzales v. Beto, 445 F.2d 1202 (5th Cir., 1971); Rowley v. United States, 185 F.2d 523 (8th Cir. 1950). We have also reviewed appellant Langford's other contentions that the trial court erred in refusing a mistrial because counsel for the defendants inadvertently left a copy of an out-of-court statement made by witness Hatcher in a room which the jury occupied for a short period of time during the trial. The trial court exercised its discretion in denying a mistrial. The record demonstrates no abuse of that discretion. At the time of presenting the motion for a mistrial, the appellants could not demonstrate that any member of the jury had seen the statement in question or that matters of fact contained in the statement were inconsistent with Hatcher's testimony at the trial.

■ Lastly, Langford objects to his thirty-year sentence as excessive. The court meted out a sentence within the limits prescribed by law and within the bounds of its discretion.

Affirmed.