UNITED STATES of America, Appellee,

v.

Leadell WALTON, Appellant.

UNITED STATES of America, Appellee,

v.

Eddie Lee TURNER, Appellant.

Nos. 75–1721, 75–1722.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1976.

Decided Aug. 5, 1976.

Rehearing and Rehearing En Banc
Denied Aug. 27, 1976.

Michael J. McDonald, St. Louis, Mo., for appellant, Leadell Walton in No. 75–1721.

Richard Ong, Clayton, Mo., for appellant, Eddie Lee Turner in No. 75–1722.

Frederick R. Buckles, Asst. U. S. Atty., St. Louis, Mo., for appellee; Donald J.

Stohr (former U. S. Atty., effective May 15th Barry A. Short, U. S. Atty.), and Frederick R. Buckles, Asst. U. S. Atty., St. Louis, Mo., on brief.

Before CLARK, Associate Justice,* BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Following a joint jury trial conducted in September, 1975 defendants, Leadell Walton and Eddie Lee Turner, were convicted in the United States District Court for the Eastern District of Missouri [1] of the offense of aggravated armed robbery of a savings and loan association in the City of St. Louis, Missouri, the deposits in which association were insured by the Federal Savings and Loan Insurance Corporation, an agency of the United States. 18 U.S.C. § 2113(a) and (d). Both defendants were sentenced to imprisonment for terms of twenty-five years but with the stipulation that they should be eligible for parole at the discretion of the Parole Board. 18 U.S.C. § 4208(a). Both defendants have appealed, and their appeals have been consolidated and considered together.

The one-count indictment returned by the grand jury charged that on or about July 18, 1975 the defendants, who have been identified, and a third defendant, Leland Browner, robbed the New Age Federal Savings and Loan Association in St. Louis of approximately $16,500.00, and that in the course of the robbery they employed deadly weapons and imperilled the life of Gwendolyn Frost, an employee of the association.

Counsel for Walton and Turner filed numerous pretrial motions, including motions to suppress evidence and motions for separate trials. Those motions were denied in whole or in part, and, as indicated, defendants were tried jointly; however, they were represented by different attorneys.

Over the objection of the defendants the district court admitted into evidence the confession of Walton which implicated Turner, and the confession of Turner which implicated Walton.[2] The district court also admitted over objections items of evidence recovered as a result of Turner's confession and as a result of a warrantless search of an automobile that Walton had purchased for cash very shortly after the robbery. In connection with the confessions, the district court refused to cause the name of Turner to be deleted from Walton's confession and similarly refused to cause the name of Walton to be deleted from Turner's confession.

There is no question that on the occasion in question the savings and loan association was robbed by three men armed with pistols and that shots were fired in the course of the robbery although no one was wounded or killed. As the robbery was in progress, photographs of the robbers were taken by surveillance cameras.

Ms. Frost, who has been mentioned, was able positively to identify Walton as the man who threatened her and forced her to turn a large sum of the association's money over to him. As the robbers fled from the association's place of business, they were observed by Ms. Donna Harris who was sitting in an automobile parked outside the establishment. She testified that one of the men was wearing a white hat, white shirt and white scarf. She described another as wearing a blue denim hat and a blue shirt with stripes on it. At trial she identified Turner as the man wearing the blue hat and striped shirt. She also identified Turner as the individual appearing in one of the pictures taken by a surveillance camera.

The robbery was investigated jointly by the Federal Bureau of Investigation and by the St. Louis Police Department; it appears that in the investigation Captain Troupe of the Police Department played the principal part.

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

2. Such confessions introduced at a joint trial of confessing defendants may properly be referred to as "interlocking" confessions, and they will be so referred to in this opinion.

After the robbery Captain Troupe learned through an informant who had supplied reliable information to the Department for some thirty years that the men who had robbed the association were Walton, Browner and a third man whom the informant knew by sight but not by name.

Later the informant advised Troupe that at a given time and place in or near Normandy in St. Louis County, Missouri, Walton and the "third man" could be found in a parked automobile. At the time indicated Officer Tom Ferguson of the Normandy Police Department, dressed in his official uniform, went to the scene, observed a parked automobile with two men in it. As he left his own car and approached the parked vehicle, the two men fled. He pursued one of them, and while he was not able to catch the fugitive he came close enough to him to identify him as Turner.

Soon thereafter Captain Troupe and other St. Louis officers arrived on the scene. A license check on the parked vehicle revealed that the license had been issued to Walton but for another vehicle. At this time the doors of the car were unlocked and the windows were down. The car was processed for fingerprints. The car was then searched, and the officers found in the glove compartment a title document which indicated that Walton had bought the car from a used car dealer on July 19, 1975, the day after the robbery, for $1200.00. The used car dealer testified at the trial that he had sold the car to Walton, and that Walton had paid for it with twenty dollar bills.

The parked car was searched on July 21, 1975, and later on the same day Turner was arrested on the basis of the description supplied by Officer Ferguson. The arresting officer identified Turner as the man whom he had arrested, and Officer Ferguson identified Turner as the man whom he had chased unsuccessfully.

On July 22 Turner was identified in a police lineup as one of the robbers by Ms. Harris. On July 24 Turner made a confession to Special Agent Hess of the FBI and implicated Walton. As a result of Turner's confession the investigating officers were able to recover the clothes that he wore in the robbery and about $1700.00 which was Turner's unexpended portion of the proceeds of the robbery. Also as a result of the Turner confession the officers were able to locate the automobile that had been used by the robbers as a getaway car, and the prints of both Walton and Turner were found on or in that vehicle.

Walton was not arrested until August 11. On August 12 he was interviewed by Special Agent Northcutt of the FBI and gave a confession in which he implicated Turner.

The facts as above stated were established at the trial by witnesses for the government. While both Walton and Turner testified at the pretrial hearing which the district court held in connection with the motions filed by the defendants, neither of them testified at the trial. Turner called no witnesses. Walton attempted to establish an alibi through the testimony of his sister.

Assuming the admissibility of the government's evidence, it is obvious that it established the guilt of the defendants not only substantially but overwhelmingly, and the defendants do not contend to the contrary. They base their appeals on other grounds, all of which we have considered, but not all of which do we find it necessary to set out or discuss.

The defendants contend, principally it seems to us, that the district court erred in not granting separate trials, in admitting into evidence the interlocking confessions of the defendants, and in not deleting from Walton's confession reference to Turner and in not taking the converse course with respect to Turner's confession.

Both defendants also contend that the district court erred in admitting evidence obtained as a result of the warrantless examination and search of the automobile that Walton purchased after the robbery.

Turner, individually, claims that his confession was not voluntary and should have been suppressed, and that the district court also erred in admitting evidence obtained as

a result of the information disclosed by Turner in his confession.

We take up first the claim last mentioned. The district court held a full evidentiary hearing on the several motions filed by the defendants and refused to suppress their confessions. In that connection the district court did not make initially the specific findings required by this court in *Evans v. United States*, 375 F.2d 355, 360 (8th Cir. 1967).[3] A similar failure to make findings was recently involved in *United States v. Johnson*, 529 F.2d 581 (8th Cir. 1976). There, we remanded the case to the district court for the purpose of enabling it to make and certify to this court appropriate findings. We followed the same course here. The district court duly made and certified adequate findings to us which we have considered.

■ The district court found ultimately that the confessions of both defendants were made freely and voluntarily after *Miranda* warnings were given and after the respective defendants had knowingly and intelligently waived their rights not to incriminate themselves and to be represented by retained or appointed counsel during their interrogations.

We are convinced that the findings just mentioned have substantial evidentiary support in the record, and are not clearly erroneous. Therefore, aside from the claim that the district court erred in admitting both confessions in the course of a joint trial of the two defendants, we conclude that the confessions were properly admit-

ted, from which conclusion it follows that the government was also entitled to introduce evidence which was discovered as a result of Turner's confession.

What has just been said brings us to a consideration of the defendants' contention that the confessions, even if otherwise admissible, should not have been admitted in view of the action of the district court in refusing to grant the defendants separate trials.

Preliminarily, we will say that we are satisfied that the determination of the district court not to grant separate trials was not in itself an abuse of discretion and did not constitute reversible error.

The problem of interlocking confessions is a by-product of the holding of the Supreme Court in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[4] In that case it was held that where two defendants are tried jointly, the admission into evidence of the confession of one defendant may be so prejudicial to the other as to require reversal as to him even though the trial judge may have instructed the jury that the confession was to be considered against the confessing defendant alone and was not to be considered against the non-confessing defendant. The rationale of the decision was that the introduction of a confession of one defendant on trial which confession implicates the other defendant on trial deprives the latter of his right of confrontation guaranteed by the sixth amendment, and that the risk that the jury will consider the confession against the other defendant may be so great that it cannot

---

3. George William Bruton was a co-defendant of Evans, and Bruton filed a petition for certiorari in the Supreme Court of the United States which petition was granted. *Bruton v. United States*, 389 U.S. 818, 88 S.Ct. 126, 19 L.Ed.2d 70 (1967). Subsequently, the decision of this court was reversed, *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), but the reversal did not impair the validity of our holding that specific factual findings must be made in order to satisfy the requirements of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

4. As heretofore noted (n. 3), *Bruton* arose in this circuit and involved as defendants George William Bruton and William James Evans; both were accused of the armed robbery of a person lawfully in custody of mail matter. 18 U.S.C. § 2114. Evans confessed his guilt on two occasions. Bruton did not confess. Neither defendant testified. The confessions of Evans were admitted against him alone in the course of a joint trial, and the jury was instructed not to consider the confessions as against Bruton. The conviction of Evans was reversed on appeal; that of Bruton was affirmed by this court but was reversed by the Supreme Court.

be overcome by a cautionary instruction.[5] In the course of its opinion the Court observed that the government's independent case against Bruton was not a strong one. 391 U.S. at 126, 88 S.Ct. 1620.

The question of interlocking confessions was involved, at least up to a point, in the later case of *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). In that case Harrington, a white man, and three blacks were jointly tried and convicted of felony murder in the state courts of California. Harrington, while not confessing outright that he had committed the offense, made certain incriminating admissions. The three blacks confessed, and while they did not implicate Harrington by name, their confessions contained allusions to a white participant that clearly referred to Harrington. One of the confessing blacks testified and was cross-examined by Harrington's attorney. The other two blacks did not testify. All three of the confessions were admitted in evidence with the usual cautionary instructions.

Harrington's conviction was affirmed by the Court of Appeals of California, and the Supreme Court of the United States granted certiorari. The conviction was affirmed by reference to the "harmless error" rule laid down in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court pointed out that apart from the confessions of the non-testifying co-defendants the case against Harrington was a strong one, that counsel for Harrington had the opportunity to cross-examine the co-defendant who did testify, and that the confessions of the co-defendants who did not testify were simply cumulative.

■ It is now well established that *Bruton* does not automatically call for a reversal where interlocking confessions of co-defendants tried at the same time are admitted in evidence, and that there should be no reversal where the appellate court is convinced that a complaining defendant was not subjected to a substantial risk of incurable prejudice as a result of the admission of his co-defendant's confession. *See Brown v. United States*, 411 U.S. 223, 230–32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Harrington v. California, supra; United States ex rel. Stanbridge v. Zelker*, 514 F.2d 45 (2d Cir. 1975); *United States v. DeBerry*, 487 F.2d 448 (2d Cir. 1973); *United States ex rel. Ortiz v. Fritz*, 476 F.2d 37 (2d Cir.), *cert. denied*, 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973); *United States v. Spinks*, 470 F.2d 64 (7th Cir.), *cert. denied*, 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305 (1972); *Tasby v. United States*, 451 F.2d 394 (8th Cir. 1971), *cert. denied*, 405 U.S. 992, 92 S.Ct. 1262, 31 L.Ed.2d 459 (1972); *United States v. Fountain*, 449 F.2d 629 (8th Cir. 1971), *cert. denied*, 405 U.S. 929, 92 S.Ct. 981, 30 L.Ed.2d 802 (1972); *Metropolis v. Turner*, 437 F.2d 207 (10th Cir. 1971); *United States ex rel. Catanzaro v. Mancusi*, 404 F.2d 296 (2d Cir. 1968).

In *United States v. Fountain, supra,* in which convictions based in part on the use of interlocking confessions were affirmed, this court said that the principles laid down in *Bruton* must be applied with "practicality and common sense." 449 F.2d at 633.

In *United States ex rel. Stanbridge v. Zelker, supra,* 514 F.2d at 48, the court said:

In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that the defendant's inability to cross-examine a non-testifying co-defendant about his implicating confession violated defendant's Sixth Amendment right of confrontation. The scope of the *Bruton* decision has been considered by our court on a number of occasions, and we have concluded that error of constitutional dimensions does not inevitably occur if the questioned confession is admitted under proper instructions from the court concerning its limited use and purpose. The likelihood of error must be measured against the

---

5. We note at this point that in the instant case the district court told the jury that a confession may be considered only against the defendant who has made it. In other words, the jury was told that Turner's confession could not be considered against Walton, and that Walton's confession could not be considered against Turner.

prejudicial consequences of the failure of the jury to follow the court's instructions, i. e., the 'devastating' effect of the incriminations contained in the codefendant's admissions. [See *Bruton,* at 136, 88 S.Ct. 1620, 20 L.Ed.2d 476]. Where the confession adds nothing to what is otherwise clearly and properly in the case, it can have little 'devastating' effect. (Footnote omitted.)

As far as the instant case is concerned, we are satisfied that the admission of the confessions in question does not call for a reversal as to either Walton or Turner. From a practical standpoint, it makes no difference whether we say that the admission of the confessions was not error or whether we say that the error, if any, was "harmless beyond reasonable doubt." *Metropolis v. Turner, supra,* 437 F.2d at 208–09; *see also United States ex rel. Ortiz v. Fritz, supra,* 476 F.2d at 40, n. 5.

■ Here, apart from the confession of his co-defendant, the government's case against each of the defendants was an extremely strong one, and each of the defendants would rather obviously have been found guilty had he been tried alone and had the confession of his co-defendant been left out of the case entirely. As far as Walton was concerned, the confession of Turner did no more than corroborate what Walton had said himself and was simply cumulative to Walton's own confession and the other evidence in the case. As to Turner, the same thing may be said about the Walton confession. In the light of the evidence and of the instructions of the district court, we are convinced that neither defendant was substantially prejudiced by the introduction of the confession of his co-defendant.

■ Walton complains that the district court erred in refusing to require that Turner's confession be edited so as to exclude specific references to Walton by name, and we will assume that Turner is advancing a similar contention with respect to references to him in Walton's confession. It may be conceded that such a redaction of a confession may be appropriate in some

cases, but it must be recognized that it is futile in others. *United States v. Spinks, supra,* 470 F.2d at 65, n. 2. In view of all of the evidence in the case we are persuaded that neither defendant would have gained any substantial benefit from having substituted for his name in his co-defendant's confession such a term as "the other fellow" or the like. Neither defendant was entitled to have the confession of his co-defendant distorted, and we are satisfied that an undistorted confession of Turner would clearly have identified Walton, even though his name, as such, did not appear in the version of the confession considered by the jury, and we are similarly satisfied in converse with respect to an undistorted confession of Walton.

■ We also reject the contention of the defendants that the district court should have suppressed evidence obtained as a result of the examination and search of Walton's automobile. Turner had no standing to complain of that examination and search. *Brown v. United States, supra,* 411 U.S. at 229, 93 S.Ct. 1565. As to Walton, it will be recalled that both he and Turner fled from and abandoned the car when Officer Ferguson appeared on the scene, and we do not consider that the subsequent warrantless search and examination of the vehicle on the scene by members of the St. Louis Police Department violated any fourth amendment right of Walton's. *United States v. Moody,* 485 F.2d 531 (3d Cir. 1973); *United States v. Edwards,* 441 F.2d 749 (5th Cir. 1971). *Cf. Mullins v. United States,* 487 F.2d 581 (8th Cir. 1973); *Friedman v. United States,* 347 F.2d 697 (8th Cir.), *cert. denied,* 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965); *Feguer v. United States,* 302 F.2d 214 (8th Cir.), *cert. denied,* 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962). Further, apart from any question of abandonment as such, we are satisfied that the officers had probable cause to make a warrantless search of the car, and that the search was not unreasonable. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). *See also South*

*Dakota v. Opperman,* —— U.S. ——, 96 S.Ct. 3092, 48 L.Ed.2d —— (1976), wherein the Court upheld a warrantless inventory search of an automobile which had been towed to a police storage facility on account of a parking violation by the owner.

In the course of its instructions the district court told the jury that where two or more persons are charged with the commission of an offense, the guilt of any defendant may be established without proof that he personally did every act constituting the offense charged. Turner complains that immediately following that instruction the district court quoted to the jury the language of 18 U.S.C. § 2 which defines "principals" and which includes in the definition persons who cause an offense to be committed or who aid, assist, or abet in its commission. Turner says that there was no evidence that he caused the other defendants to rob the savings and loan association or that he "aided, assisted, or abetted" them in the robbery.

■ There is no merit to that contention. Immediately following the challenged quotation, the district court told the jury, "In other words, every person who willfully participates in the commission of a crime may be found to be guilty of that offense." It frequently happens that an armed robbery committed by two or more persons is characterized by what may be termed a "division of labor," and a jury needs to be told that it is not necessary in order to convict a given defendant that the government prove that he personally committed every act that took place in the perpetration of the crime, and that any person who willfully participates in the commission of a crime is guilty. And we do not see that Turner or Walton was prejudiced by the fact that the district court quoted the pertinent statute to the jury.

■ Turner also complains about the instruction to the effect that a jury may "properly" find a defendant "guilty" on either direct evidence or circumstantial evidence. The complaint is that the district court should have said that a jury may properly find a defendant either "guilty" or "not guilty" on either of the two types of evidence which have been mentioned. We do not find that the omission of the "not guilty" alternative was error. The defendant was either guilty or he was not, and the burden was on the government to prove guilt by the evidence and beyond a reasonable doubt. If the government failed to discharge that burden, then it was the duty of the jury automatically to return a "not guilty" verdict. We have considered the instructions of the district court dealing with presumption of innocence, burden of proof, and reasonable doubt, and we find that they fairly and fully stated the law.

■ Turner complains still further that the district court erred in refusing to instruct the jury that the fact that the defendants were being tried together was not to be considered as evidence that either of them was guilty, and that joint trials are often held for reasons of economy of time and effort and perhaps for other reasons. Turner's request for an instruction along those lines was innocuous, and it would have done no harm to grant it. We do not think, however, that it was error for the district court to refuse the request, and certainly the refusal was not prejudicial error calling for a reversal.

Other assignments of error do not appear to us to raise any substantial questions.

From what has been said, it follows that the judgment of the district court as to both defendants will be, and is, affirmed.