UNITED STATES

v.

Airman First Class Ronald L. PURITE, FR 367–64–0884 3750th Civil Engineering Squadron Sheppard Technical Training Center (ATC).

ACM 22197.

U. S. Air Force Court of Military Review.

Sentence Adjudged 15 Dec. 1976.

Decided 15 Aug. 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Captain George L. Squires, USAFR. Captain Edward N. Smith and Captain Michael B. McShane filed a brief on behalf of the accused. Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before ABRAMS, Chief Judge and EARLY, Senior Judge and FORAY, Appellate Military Judge.

## DECISION

EARLY, Senior Judge:

Tried by general court-martial, the accused was convicted, pursuant to his pleas, of an attempt to steal mail and stealing mail, and, despite his pleas, of desertion, stealing a cassette recorder and possession of marijuana, in violation of Articles 80, 85, 121 and 134, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 885, 921, 934. The approved sentence extends to a dishonorable discharge, confinement at hard labor for 20 months, forfeiture of all pay and allowances and reduction to the lowest enlisted grade.

Appellate defense counsel invite our attention to the errors asserted by the accused in his request for appellate representation and the excellent brief submitted by the trial defense counsel. Additionally they assign one error. As to the former, these errors were considered in the review of the staff judge advocate and properly resolved against the accused, or are otherwise without merit. Accordingly, we discuss only the error assigned by appellate defense counsel. In this, they assert:

THE MILITARY JUDGE ERRED IN ADMITTING, OVER OBJECTION, PROSECUTION EXHIBITS 7, 9, 10, 11 AND 12, FRUITS OF AN UNLAWFUL SEARCH OF THE ACCUSED'S AUTOMOBILE.

We disagree.

On 15 November 1975, Special Agent Linscombe of the Air Force Office of Special Investigations, was conducting a television surveillance in Postal Center # 2 at Sheppard Air Force Base, Texas. The accused was observed to enter the building, break the glass of a postal box and attempt to steal mail. Linscombe pursued the accused but failed to catch or identify him. An airman approached Linscombe on the street in front of the building and told him that the person whom he had been pursuing had driven to the building in a late model automobile which was parked nearby. Linscombe located the automobile and called a legal officer, who informed him that although there was insufficient probable cause to search the car, there was cause to have the car impounded. The security police were notified, and the impoundment procedure began. At the time the car was locked, the headlights were on (even though it was daylight), and a wallet was laying on the front seat. The security police unlocked the car and began an impoundment inventory of the contents. Upon opening the glove compartment, two bags of a brownish vegetable substance, believed to be marijuana, were seen. The inventory was stopped, and authority to search the car was requested from the base commander. This authority was granted, and the car was searched. When the rear seat was removed in an attempt to secure ingress to the locked truck, certain items of stereo equipment were seen through the metal plate which separated that compartment from the rest of the car.

At some time prior to the impoundment, a check of the base decal number indicated that the accused owned the car. However, the license plates were registered in the name of another party. The wallet found on the front seat contained an identification card and driver's license in the name of the accused.

Later that evening the accused was apprehended at his barracks. After being properly advised of his rights, the accused

was searched, and a screwdriver and car keys were seized. The keys were used to open the locked trunk,[1] and the stereo cassette player which ultimately became the basis for Charge III was found.[2]

■ Initially we disagree with the base legal officer that there was insufficient grounds for a search of the automobile. The operative facts show:

1. A crime was committed in the presence and view of police officers;[3]

2. An unidentified individual fled;

3. The car used to arrive at the scene of the crime was located; and

4. The identity of the owner of the car was unclear.

Based on these facts we believe the reasonably prudent officer[4] has reasonable grounds for a limited search, with or without authorization to discover and clarify the ownership of the car. Since initially no authority to search was given, the test is not probable cause, but the reasonableness of the actions taken by the officers in terms of the Fourth Amendment protections. *United States v. Balanow,* 528 F.2d 923 (7th Cir. 1976); cf. *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The case of *United States v. Walton,* 538 F.2d 1348 (8th Cir. 1976), cert. denied, 429 U.S. 1025, 97 S.Ct. 647, 50 L.Ed.2d 628 (1976), is apposite to the situation here. There police observed two men, in a parked car, whom an informer identified as having robbed a savings and loan association. As the police approached, the two men fled. The police opened the doors of the car and searched it. A title certificate for the car was found in the glove compartment. The court held:

As to Walton, it will be recalled that both he and Turner fled from and abandoned the car when [the police] appeared on the scene, and we do not consider that the subsequent warrantless search and examination of the vehicle on the scene by members of the . . . Police Department violated any fourth amendment right of Walton's. . . . [Citations omitted.] Further, apart from any question of abandonment as such, we are satisfied that the officers had probable cause to make a warrantless search of the car, and that the search was not unreasonable. (Citations omitted.)

538 F.2d at 1354.

Similarly, in *United States v. Edwards,* 441 F.2d 749 (5th Cir. 1971), where the driver of a car, being pursued by police for speeding, abandoned the car on a public right of way, the court found the ensuing warrantless search which uncovered contraband whiskey, to be a reasonable search under the Fourth Amendment. The court held:

A bilateral approach to this search reveals legality on two grounds. First, considering the case from the defendant's point of view, we find that by abandonment he had no Fourth Amendment right to be secure against this kind of search, at the time it was made. Second, from the Government's standpoint, we find

1. The search of the trunk was within the authority previously granted by the base commander. The seizure of the cassette player, though not an item specified in the search authorization, was proper since Agent Linscombe believed it to be part of some equipment stolen from an airman on the base.

2. Prosecution Exhibit Number 7 was the marijuana found in the glove compartment; Number 9 was the cassette recorder; Number 10 was a picture of the serial number of the recorder; Number 11 was the evidence tag for the recorder; and Number 12 was the laboratory report of the analysis of the marijuana.

3. We believe the reliability of a television surveillance is sufficiently well established to consider it the same as an unaided observation.

4. "Reasonable grounds are determined by the circumstances. . . . The question is what constituted probable cause in the eyes of a reasonable, cautious and prudent peace officer under the circumstances of the moment." *Bell v. United States,* 102 U.S.App.D.C. 383, 254 F.2d 82 (1958).

that the search reasonably balanced the interest of the state with the defendant's civil rights in this situation.

441 F.2d at 751.

We find here that the investigators had reasonable grounds to search the vehicle to determine the identity of its owner (as well as whether it was stolen) and ascertain the identity of the individual who had committed the crime. Further, in view of the uncertainty of ownership engendered by the different registrants of the license plates and the base decal, and the wallet laying in plain view on the seat, we find no unreasonableness in opening the doors to search for indicia of ownership. We also find that opening the glove compartment to have been well within the reasonable parameters of such a search since it is recognized that indicia of ownership are commonly kept in that place. See *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *United States v. Pennington*, 441 F.2d 249 (5th Cir. 1971), cert. denied, 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1971).

Once the opened glove compartment revealed what appeared to be contraband drugs, the investigators properly halted the search and sought authorization from the base commander for a complete search of the car.

■ In sum we find that the investigators had reasonable grounds to make a limited, warrantless search of the car, and that the base commander had probable cause to authorize a further complete search after discovery of the contraband.[5]

---

**5.** In view of our holding that the investigators had probable cause for the first search—whatever it might have been captioned—we need not decide whether impoundment was the proper procedure to follow. See *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). However, we note that impoundment is a procedure based on statute (or, as here, regulations). Those cases discussing the legality of inventories following impoundment have closely examined the procedures followed to insure that the police adhered to the authorizing statute and were not using that procedure as a subterfuge for an unauthorized search. See *South Dakota v. Opperman*, supra; *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); cf. *United States v. Lawson*, 487 F.2d 468 (8th Cir. 1973). Defense counsel argue that since the regulation authorizing impoundment permitted such action only if a car was parked in the same place for five days and the registered owner had departed the base, or if the car was illegally parked or presented a hazard to other traffic and, since none of these conditions were present here, impoundment was improper. We do not believe these limitations cover the instant factual situation. First, it appears clear that the driver abandoned the car when he fled leaving it parked. See generally *United States v. Walton*; *United States v. Edwards*, both supra. Thus, it would appear meaningless for the police to leave the car parked for five days before taking action. Second, the wallet in plain view constituted property which needed safeguarding. Third, the car's lights were on, and common sense tells that the car's battery would be soon exhausted and the car, for all practical purposes would be immovable under its own power. In sum, the situation fairly cried out for some immediate action for the purpose of protecting the car and its contents for the owner, whoever that might be. However, in order to do this, the car had to be opened, the property secured and the lights turned off. Logically, action had to be taken to locate the owner so that the property could be returned. Undoubtedly, had the owner been anyone other than the fleeing individual, he would have consented to such entry. Thus, it seems clear that in balancing the expectations of privacy one has in his car—albeit less than one would have for his home or office, see *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *South Dakota v. Opperman*, supra, concurring opinion of Justice Powell—the actions taken by the investigators either from the point of view of the car owner or from the Government must be deemed reasonable no matter what theory is used to justify the search. As was held in *Chambers v. Maroney*, 399 U.S. 42, 51–2, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970):

Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which is the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

Accordingly, for the reasons stated, the findings of guilty and the sentence are AFFIRMED.

ABRAMS, Chief Judge, and FORAY, Judge, concur.