UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ANNE DURNEY,

        *Plaintiff-Appellant,*

v.

C. DUVAL DOSS; TRAVIS DOOMS;
DOUG GOWEN; L. J. AYERS, III,
Sheriff,

        *Defendants-Appellees.*

No. 03-1975

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Norman K. Moon, District Judge.
(CA-02-30-6)

Argued: May 6, 2004

Decided: July 28, 2004

Before MOTZ and SHEDD, Circuit Judges, and
Pasco M. BOWMAN, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Thomas Hunt Roberts, THOMAS H. ROBERTS &
ASSOCIATES, P.C., Richmond, Virginia, for Appellant. Carlene
Booth Johnson, PERRY & WINDELS, Dillwyn, Virginia, for Appel-

lees. **ON BRIEF:** James J. Knicely, KNICELY & ASSOCIATES, P.C., Williamsburg, Virginia, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Anne Durney, the plaintiff below, appeals the District Court's grant of summary judgment against her on her 42 U.S.C. § 1983 (2000) claims. After careful review of the record, we determine that the District Court properly granted summary judgment for the defendants.

Durney's claims arise from her arrest in a Wal-Mart parking lot in Amherst County, Virginia on May 4, 2001. Appellee Travis Dooms, a deputy in the Amherst County Sheriff's Department, was called to the lot after Karla Jones, a Wal-Mart customer, reported that a pick-up truck had backed into her parked car and had dented its front bumper. Jones had attempted to track down the truck's owner to no avail. Dooms arrived, observed the damage to Jones's car, and asked dispatch to run the truck's Wyoming license plate number in order to determine the identity of the vehicle's owner. Dispatch reported that the license plate number had been issued to a blue car, rather than to a green pick-up truck. Puzzled by this inconsistency, Dooms then asked dispatch to run the truck's VIN number, which came back as not on file. Dooms became suspicious because unrecorded VIN numbers are often associated with criminal activity. Dooms then asked dispatch to contact the Wyoming Department of Motor Vehicles ("DMV") to see if they could determine who owned the truck. The DMV indicated that the truck belonged to Durney. Dooms had Wal-Mart page Durney in the store to no avail. After an hour of attempting to locate the driver of the truck, Dooms opened a toolbox contained in the truck's bed in the hope that it might yield information as to the driver's identity.

Immediately upon Dooms's opening the toolbox, Durney and her husband approached. Durney began yelling that Dooms had no right to search the toolbox and was violating her constitutional rights. Dooms explained that Jones had reported damage to her car and that he was simply attempting to determine the identity of the truck's driver in order to provide Jones with the name of the driver of the truck that struck her car. Durney refused to identify herself to Dooms, re-entered Wal-Mart, and called the sheriff's department to complain about Dooms's behavior. Durney spoke with appellee Sheriff L.J. Ayers, who explained why Dooms needed to obtain certain information from Durney; she agreed to provide the requested information to Dooms and Jones. Nonetheless, upon returning to the parking lot, Durney again refused to identify herself or provide any information to Dooms. She then got into the driver's seat of her truck and turned on the engine. By this time, appellee Doug Gowen, a sergeant in the sheriff's department, had arrived and explained why the officers were requesting the information, but Durney still refused to cooperate. Dooms then called Ayers who, speaking through Dooms's radio, repeated that Durney needed to provide the information. Upon her refusal, Dooms arrested Durney for interfering with the performance of his lawful duties. Durney refused to cooperate with the deputies, so they carried her to the squad car for the drive to the county jail. Still uncooperative when the squad car arrived at the jail, she was carried into the jail, where she was charged and spent a few hours before posting bail. The offenses with which she was charged included impeding a law-enforcement officer in violation of Va. Code Ann. § 18.2-460 and operating an uninsured vehicle in violation of Va. Code Ann. § 46.2-707. Durney was tried in Amherst General District Court and was found guilty on the impeding-of-a-law-enforcement-officer charge, but on trial de novo in the Amherst County Circuit Court her conviction was overturned and the case against her dismissed because of a defect in the charging instrument.

Durney then filed this § 1983 action alleging that appellees had violated her constitutional rights in searching the truck's toolbox and in arresting her. Ruling upon cross motions for summary judgment, the District Court considered the undisputed evidence, concluded that on the record presented no reasonable trier of fact could find that any of Durney's constitutional rights had been violated, and granted summary judgment against Durney on the merits of all her claims. As an

alternative holding on Durney's unreasonable-search claim, the District Court determined that Dooms was entitled to qualified immunity with regard to his search of the toolbox. On appeal, Durney argues that Dooms's search of the toolbox violated her Fourth Amendment right against unreasonable searches; that she was stopped, detained, and arrested in violation of her Fourth Amendment right against unreasonable seizures; that she was arrested in retaliation for exercising her First Amendment rights; and that none of the appellees are entitled to qualified immunity. We consider the arguments seriatim.

We review a grant of summary judgment de novo, *Love-Lane v. Martin*, 355 F.3d 766, 775 (4th Cir. 2004), examining the record in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Durney first argues that the warrantless search of the toolbox found in the bed of her pickup truck was unreasonable under the Fourth Amendment. We reject this argument. The District Court determined that exigent circumstances, notably the fact that the car could easily be moved while Dooms attempted to secure a warrant to search the truck and the conflicting information as to the ownership and licensing of the vehicle, justified this warrantless search. Without addressing the exigent-circumstances ground relied upon by the District Court, we affirm the grant of summary judgment on this claim on the ground that Dooms lawfully examined the contents of the toolbox while acting in a community-caretaking capacity, so that the warrantless search did not violate Durney's Fourth Amendment rights.

As noted by the Supreme Court, "[l]ocal police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what . . . may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). Dooms's investigation of this minor "fender-bender" was undertaken in furtherance of this community-caretaking function. Dooms was on the scene not to investigate the accident but merely to aid Karla Jones gain the information required for her to submit an insurance claim.

*See also* Va. Code Ann. § 46.2-896 (requiring driver who damages unattended property to notify owner of damage or leave a note containing driver's name, address, driver's license number, and vehicle registration number). Dooms's examination of the contents of the toolbox for some form of identification, after numerous searches of DMV records elicited conflicting information about the truck's ownership and registration, was a permissible exercise of his community-caretaking powers. In *United States v. Powers*, 439 F.2d 373 (4th Cir.), *cert. denied*, 402 U.S. 1011 (1971), a case that preceded *Cady*, this Court permitted a law-enforcement officer, who had "a legitimate ground for checking the identification number", *id.* at 376, to open the door of a car without a search warrant in order to look for a vehicle's VIN. Similarly, Dooms's exercising his community-caretaking powers in order to aid Jones identify the driver of the vehicle that had damaged her car was a legitimate ground for examining the contents of the toolbox. *See, e.g. United States v. Edwards*, 441 F.2d 749, 754 (5th Cir. 1971) ("It is now clear that a policeman, entitled to be on the property where the car is located, may search a vehicle to determine the identity of its owner."); *United States v. Purite*, 3 M.J. 978, 980 (A.C.M.R. 1977) (permitting limited warrantless search of an automobile in order to determine the identity of its owner). Dooms did not violate Durney's Fourth Amendment rights by opening the toolbox in an attempt to identify the owner of the truck.

Durney next argues that she was unreasonably seized in violation of her Fourth Amendment rights when Doooms and Gowen would not let her leave without providing them with the requested information. The Supreme Court has long recognized that "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *INS v. Delgado*, 466 U.S. 210, 216 (1984). Dooms's initial requests for Durney's name did not implicate any of her Fourth Amendment rights. *See Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt County*, ___ U.S. ___, ___ 124 S. Ct. 2451, 2458 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."). Furthermore, officers with a reasonable suspicion of ongoing or imminent criminal activity may detain individuals in order to investigate this suspicion. *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). In stopping Durney from leaving the parking lot,

Dooms and Gowen were, at most, conducting a valid *Terry* stop because, by the time they prevented Durney from leaving the parking lot, the deputies had reason to believe that Durney was violating the law by refusing to provide information to them or to Jones. *See* Va. Code Ann. §§ 18.2-460 (prohibiting the obstruction of a law-enforcement officer in the performance of his lawful duties) & 46.2-896 (requiring drivers who damage unattended property to provide owner of such property with their name, address, driver's license number and vehicle registration number).

Durney also claims that her warrantless arrest was unreasonable under the Fourth Amendment because the officers lacked probable cause to arrest her. A warrantless arrest is permissible under the Fourth Amendment if, at the time of the arrest, the officer had probable cause to believe that the arrestee had committed or was committing a crime. *See United States v. McCraw*, 920 F.2d 224, 227 (4th Cir. 1990). At the time of the arrest, the deputies had probable cause to believe that Durney had violated numerous laws, including probable cause to believe that she was obstructing justice in violation of § 18.2-460(a). Because they had probable cause to believe that Durney had violated the law, the deputies did not violate Durney's Fourth Amendment rights when they arrested her without a warrant.

Durney further argues that she was arrested in retaliation for exercising her First Amendment rights. This claim is meritless. As noted above, the deputies arrested Durney because they had probable cause to believe that she had committed a crime in their presence. There is no evidence whatsoever that she was arrested for exercising her right to free speech.

Finally, Durney argues that defendants' claim of qualified immunity should have been denied in its entirety. Law-enforcement officers are entitled to qualified immunity unless they violate clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because, as discussed above, appellees did not violate any of Durney's constitutional rights, they would, of course, have been entitled to qualified immunity had the District Court not granted summary judgment against Durney on the merits of her claims. We therefore agree with the District Court's alternative holding that Dooms's brief search of the toolbox for the purpose of obtaining information that

would help identify the driver of the truck was objectively reasonable under existing law. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Even assuming arguendo that the search of the toolbox was not a permissible exercise of Dooms's community-caretaking powers, he is nonetheless entitled to qualified immunity and to summary judgment on this claim.

The judgment of the District Court is affirmed.

*AFFIRMED*