THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY BUSH, Defendant-Appellant.

(No. 56117;

First District (5th Division)—March 23, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Stephen R. Kramer, and James R. Carlson, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

In a bench trial defendant was convicted of rape and armed robbery. He received two concurrent terms of five to 15 years.

On appeal he contends that: (1) his waiver of a jury was not made knowingly and understandingly; (2) prejudicial hearsay deprived him of a fair trial; (3) he was not proven guilty beyond a reasonable doubt because the complaining witness lacked credibility and her story was improbable; and (4) it was error to convict and sentence him on both the rape and armed robbery charges where the force used in each offense was identical.

The convictions arose from an alleged rape and robbery of Mrs. Addie Smith on December 13, 1970. These offenses occurred in an elevator of a public housing project at 1847 West Lake Street, Chicago.

*Evidence*

*Mrs. Addie Smith, for the State:* On December 13, 1970, at about 6:00 A.M., she and her companion, Fred Frazier, had just left the Carver

Hotel. She was in her car. Frazier had started the engine and then gotten out to scrape ice off of a window. As Frazier was scraping the window, two men ran up to the car. Frazier told her to lock the door of the car. A man, later identified by her as defendant, approached the car and told her to get out. Meanwhile the other assailant was holding Frazier at gun point. She refused to leave the car until the accomplice brought Frazier around to the front of the car, still at gun point. Defendant then grabbed her by the arm, pulled her out of the car and at gun point took her across the parking lot through an adjoining vacant lot and into a housing project at 1847 West Lake Street. The three then entered the elevator in the project and one of the assailants stopped the elevator between floors. They ordered her to undress and kept her at gun point at all times. As the assailants were going through her coat pockets she tried to start the elevator. Defendant then struck her and told her not to try such a move again. She completed undressing and defendant then raped her. After defendant had intercourse with her the other assailant demanded that she perform an act of oral intercourse but she refused. The accomplice then raped her. While she dressed, defendant and his accomplice went through her purse, removed $120 and also took her watch. The assailants then started the elevator, got out at the top floor and told her to remain in the elevator.

She rode the elevator to the main floor and walked to the Carver Hotel about a block away. She saw no one on the street. The hotel manager, who was coming out of the hotel to move her car, asked if she was the girl they took from her boyfriend. She answered, "Yes" and he rushed her into the hotel. She was crying and hysterical. She told the lady clerk what had happened and asked her to call the police. "By that time" Frazier, two policemen and security guards came in. She told them what had happened and gave a description of the two assailants.

Then Officer Ed Nakutis took her to the Cook County Hospital where Detective Booker Porter showed her a stack of photographs and she picked out defendant's photograph. She was in the elevator for about 45 minutes and a bulb in the ceiling illuminated the elevator.

She was married, had spent the previous night with Mr. Frazier in the Carver Hotel and had had sexual intercourse with him at about 11:00 P.M. She was employed by Sara Lee for a year and a half.

*Fred Frazier, for the State:* He substantially corroborated Mrs. Smith's testimony as to the events at the car leading to her being forcibly taken away. He added that after the assailants took Mrs. Smith from the car, he was told by defendant's accomplice not to follow or he would be shot. He returned to the hotel, instructed the desk clerk to call the police and then drove around the vicinity with a hotel security guard in search

of Mrs. Smith. When she returned to the hotel, he and the security guard were notified by radio and returned to the hotel. When he returned to the hotel, Mrs. Smith was crying. The prosecutor asked him what Mrs. Smith said and he answered:

"I asked her what happened. She told me, 'They took me in the project.' They took her up in the project, and jammed the elevator and had raped her up in it. I asked her what she heard and she said she didn't know."

Officer Nakutis was also present at this time. Frazier went to the Cook County Hospital when the police took her there. While there, Detective Porter showed him a stack of 20 to 25 photographs and asked if he could identify the assailants. He picked the photograph of the defendant.

*Officer Ed Nakutis, for the State:* On December 13, 1970, at about 6:00 A.M., he went to the Carver Hotel. He met Mr. Frazier who informed him that Mrs. Smith had been taken away by two men. He received a description of the offenders and Mrs. Smith and then proceeded with his partner to cruise the area in search of Mrs. Smith. He and his partner returned to the hotel about 45 minutes later and found Mrs. Smith at the hotel desk. She was crying and shaking. She told him that two male Negroes had taken her into a housing project and raped her in the elevator. She gave a description of the two males. He then took Mrs. Smith to the hospital. The prosecutor then asked him if Mrs. Smith had made any other remarks. Defense counsel objected, contending that any conversation would be hearsay. The trial court overruled the objection and the witness testified in response:

"Well, I had asked Mrs. Smith what had happened and she said she had been raped. And I asked her how and where and at what time and she says that the two offenders had taken her across what would be like a vacant lot that runs next to the parking lot and into this project, housing project building, and they had stopped the elevator between floors and made her undress, raped her and before leaving, had taken her purse with a substantial amount of money."

*Detective Booker Porter, for the State:* He was assigned to the case on December 13, 1970, at about 7:00 A.M. and went directly to the Cook County Hospital where he met Fred Frazier, the hotel security guard and Mrs. Smith. He showed Mr. Frazier a group of photographs of male Negroes between the ages of 17 and 25, and Mr. Frazier selected a photograph of the defendant. He then showed the group of photographs to Mrs. Smith, and she too selected defendant's photograph.

*Larry Bush, in his own behalf:* On December 13, 1970, he was living at 703 North Central Park but had lived at 1850 West Washington Street

until November of 1970. He denied having committed the rape or robbery and could not recall what he had been doing on December 13, 1970, or where he had been that day. On cross-examination he testified that he was familiar with the Carver Hotel.

No physical evidence was introduced at trial. A lab report showing positive results for the presence of spermatozoa was admitted by stipulation.

*Opinion*

Defendant's first contention is that the trial court did not adequately advise him of his right to a jury trial and that the waiver of a jury was not made knowingly or understandingly. At the start of the trial defendant's counsel informed the trial court that the case would be a bench trial. The trial court then addressed defendant, stating:

> "Larry Bush, your counsel advises me that you wish to waive your right to a jury trial and submit this case to this court. Before permitting you to do so, it is my duty to advise you that under the law you have a right to a jury trial and submit this case to this court. Before permitting you to do so, it is my duty to advise you that under the law you have a right to a jury trial if you desire. You understand what a jury trial is?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Knowing of that legal right to a jury trial, do you wish to waive your right to a jury trial and submit your cause to this court without a jury?
>
> THE DEFENDANT: Yes.
>
> \* \* \*
>
> MR. MURPHY: Mr. Larry Bush is signing the jury waiver before this bench.
>
> THE COURT: Jury waiver is signed."

■■ Defendant contends that the jury waiver in the case at bar was not made understandingly because "the record does not show that the defendant had an adequate understanding of his right to a jury and the consequences of his waiver." We believe that the trial court adequately informed defendant of his rights and nothing in the record indicates that the trial court should have been put on notice of the need for a more detailed admonishment. *People v. Dotson,* 124 Ill.App.2d 384, 260 N.E.2d 400.

■■■ Defendant's second contention is that the trial court erred in admitting testimony by Fred Frazier and Officer Nakutis as to what the complaining witness had told them regarding the assault immediately upon their return to the hotel. Frazier and Nakutis reached the hotel "about a minute" after Mrs. Smith had returned. She was crying and

shaking according to Nakutis, When asked what had happened she stated that she had been taken to the project and raped. We believe the testimony was admissible as a spontaneous exclamation, an exception to the hearsay rule. In *People v. Damen,* 28 Ill.2d 464, 471, 193 N.E.2d 25, the court quoted from *Keefe v. State,* 50 Ariz. 293, 72 P.2d 425:

> "A spontaneous exclamation may be defined as a statement or exclamation made immediately after some exciting occasion by a participant or spectator and asserting the circumstances of that occasion as it is observed by him. The admissibility of such exclamation is based on our experience that, under certain external circumstances or physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, rather than reason and reflection, and during the brief period when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him."

In the instant case Mrs. Smith went back to the hotel immediately after the rape, met no one on the street in the one block return to the hotel, told the lady clerk what had happened and asked her to call the police and "by that time" Frazier and Nakutis arrived finding her shaking and hysterical. Her statement to them that she had been taken to the project and raped was a spontaneous exclamation. The fact that she was asked "what happened" was insufficient to destroy the spontaneity. *Damen* at 472.

■■ Mrs. Smith's statement that she was raped was also admissible as corroboration of the occurrence. It was promptly made under the circumstances, it did not contain details of the offense and was not in response to a series of questions. *Damen* at 473 and cases cited therein.

Defendant relies on *People v. Stewart,* 130 Ill.App.2d 623, 264 N.E.2d 557, for his contention that hearsay evidence was improperly admitted. In *Stewart* the victim returned to a laundromat, gathered her clothes, drove to her house, washed, and checked her children before telling her story to her aunt. She also made a statement to a police officer some time later. The reviewing court's finding that the victim had time to fabricate is inapplicable to the facts of the instant case.

■■ However, the admission of Nakutis' testimony as to what Mrs. Smith later told him in answer to his specific questions was error. (See

*People v. Harrison,* 25 Ill.2d 407, 412, 185 N.E.2d 244.) The answers were not spontaneous nor could they be considered corroborative (*People v. Fryman,* 4 Ill.2d 224, 122 N.E.2d 573) since details of the offense were elicited. We do find, however, that the admission of this testimony was harmless error beyond a reasonable doubt. (*Chapman v. California,* 386 U.S. 18.) It was basically a repetition of Mrs. Smith's testimony on direct examination.

■■ Defendant's next contention is that he was not proven guilty beyond a reasonable doubt because the story of the complaining witness was improbable and that she and Frazier lacked credibility. Defendant argues that the report of the rape and armed robbery was invented to cover up the extra-marital affair between the complaining witness and Fred Frazier. If anything, the rape and armed robbery called attention to the affair. In any event defendant's argument is mere conjecture and we are unable to find any reason to accept it. If the report of the rape and robbery was some sort of cover up or distraction, then it became a matter of the credibility of Mrs. Smith and Fred Frazier. This was a matter for the trial court sitting as the trier of fact. The determination of the trial court should not be disturbed unless palpably erroneous. *People v. Arndt,* 50 Ill.2d 390, 280 N.E.2d 230.

■■ Finally, defendant argues that he cannot be convicted and sentenced for both rape and armed robbery because the conduct and force was the same for each offense. This argument is patently erroneous. This point was dealt with in *People v. Harper,* 50 Ill.2d 296, 302, 278 N.E.2d 771, where the defendant at knife point raped a woman and then robbed her. The court stated:

> "While it is true that the rape and robbery occurred in a series of acts committed at the same place and within a short time, it is equally true that they constituted separate acts involving different elements. As such, they were separate offenses for which concurrent sentences were both constitutionally and statutorily permissible. *People v. Johnson* (1970), 44 Ill.2d 463; *People v. Raby* (1968), 40 Ill.2d 392."

Therefore it was not error for the trial court to sentence defendant to five to 15 years for armed robbery and a concurrent sentence of five to 15 years for rape.

The judgment is affirmed.

Affirmed.

ENGLISH and LORENZ, JJ., concur.