UNITED STATES of America, Appellee,

v.

John Louis IRON SHELL, Jr., Appellant.

No. 80–1083.

United States Court of Appeals,
Eighth Circuit.

Submitted May 19, 1980.

Decided Sept. 24, 1980.

Rehearing Denied Oct. 24, 1980.

Stanley E. Whiting, Day, Grossenburg & Whiting, Winner, S. D., for appellant.

Terry L. Pechota, U. S. Atty., Sioux Falls, S. D., for appellee.

Before HEANEY, BRIGHT, and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Defendant, John Louis Iron Shell, appeals from a jury conviction[1] of assault with intent to commit rape in violation of the Major Crimes Act, 18 U.S.C. § 1153 (1970). Iron Shell raises ten issues on appeal. The five primary questions are two evidentiary rulings concerning hearsay, the defendant's allegation that the district court should have instructed the jury on a lesser included offense, an attack on the jurisdictional scheme contained in the Major Crimes Act as a violation of equal protection because it prevents the use of instruction of a lesser included offense that would be available to a non–Indian defendant, and an attack on the sufficiency of the evidence to support the conviction. We affirm the jury conviction.

The indictment in this case arose out of the defendant's acts on July 24, 1979, in the community of Antelope, which is within the Rosebud Indian Reservation and near Mission, South Dakota.[2] The defense conceded at trial that Iron Shell had assaulted Lucy, a nine–year–old Indian girl. The key questions at trial concerned the nature of the assault and the defendant's intent.

At the time of the assault defendant Iron Shell was living in the Antelope community in the Beth Dillon home. He was staying there with his girlfriend, Jeanne Brave, who is Dillon's cousin. During the course of the day preceding the assault Iron Shell, in the company of friends, consumed considerable alcoholic beverages.

In the late afternoon William Burning Breast drove the defendant home. When they arrived at the Dillon house, the defendant was either asleep or had passed out. Breast and Mike Dillon, Beth Dillon's fifteen–year–old son, helped wake the defendant. Steve Mizner, a seventeen–year–old who also lived at Beth Dillon's house, helped the defendant out of the car and into the house. Mike and Steve testified that the defendant began to walk under his own power as he approached the front door. The defendant reached the Dillon house about 5:45 or 6:00 p. m. He talked and roughhoused briefly with Mike and Steve, and asked one of them to cook a hamburger. He then abruptly asked where his girlfriend Jeanne Brave was. When Mike said she was in St. Francis, the defendant was angered and left the house. He walked to his mother's home which is in the same neighborhood. He returned in about five minutes, ate the hamburger and again asked where Jeanne Brave was. When told again that she was not there, the defendant said you can tell her to go to hell and he kicked the door open and left for the second time.

Steve watched the defendant cross the highway in front of the Dillon house and enter the trail leading to his mother's house. The defendant staggered somewhat and retraced his steps several times. Because of his strange behavior, Steve called Mike to the window to watch the defendant. Both Mike and Steve testified that they saw the defendant approach Lucy who was near some cherry bushes just off the trail. Both saw the defendant grab Lucy and pull her down into some tall bushes. Steve testified he heard Lucy scream. Mike rode his bicycle to the spot where the defendant grabbed Lucy but couldn't see the girl and assumed she had escaped.

---

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota, presiding, sentenced the defendant to imprisonment for seventeen years and six months.

2. The parties stipulated that the defendant is an Indian and that the alleged attempted rape occurred on Indian territory thereby bringing the defendant within federal criminal jurisdiction. *See* 18 U.S.C. § 1153 (1970).

Mike rode back to tell Steve, and the two returned to the bushes together. They then discovered that Lucy had not escaped. Mike testified that the defendant had his arm around Lucy and was trying to make her put her arm around him. The two boys alerted the neighbors.

Mae Small Bear was told by her granddaughter at about the same time that Lucy was "crying and hollering" in the bushes behind Small Bear's house. Small Bear walked to the bushes and saw Lucy lying on her back with the defendant lying beside her on his side. Lucy's jeans were down to her ankles and she was crying. Mae Small Bear testified that the defendant tried to hide Lucy by grabbing her legs. The defendant then ran to the end of the bushes, and when Small Bear returned to the house he ran across the highway.

At about this point Pam Lunderman arrived. She testified that she saw Lucy come out of the bushes pulling up her pants and crying. Lucy told Lunderman, "that guy tried to take my pants off."[3] Lunderman testified that Lucy had weeds on her back and head, that her hair was disheveled and that her face was swollen on one side. Both Steve and Mike saw Lucy come out of the bushes and confirmed Lunderman's testimony. Mike told the jury that Lucy was "crying hard," looked scared and that her jeans were down to her knees. Steve said he saw Lucy coming out of the bushes pulling up her pants and that she was crying. The time of the assault is uncertain, but it was somewhere between 6:00 and 6:30 p. m.

Lunderman took Lucy to the police station in Mission and was directed to the magistrate's office back in the Antelope community, where a complaint was signed. During this trip Lucy appeared scared and was still crying. A police car was dispatched from Rosebud, South Dakota, to Antelope, a distance of about eleven miles.

Officer Noah Tucker, Bureau of Indian Affairs Law Enforcement, testified that his office received a report at about 6:45 p. m. Officer Tucker drove to the Dillon house to arrest the defendant. Another officer, Barbara Marshall, was sent to interview Lucy. Officer Tucker, along with a tribal policeman, found the defendant in the Dillon house asleep in his bedroom lying on his back. They noticed a knife underneath the defendant. They arrested him. The defendant was coherent and recognized Officer Tucker. He walked out under his own power.

Meanwhile, Officer Marshall conducted an interview with Lucy which began at about 7:15 p. m. in the magistrate's home and ended at about 7:30 p. m. Officer Marshall, according to her testimony, asked Lucy a single question: "What happened?" In response Lucy related the following. Lucy said her assailant grabbed her and held her around the neck and told her to be quiet or he would choke her. He told her to take her pants down and when she refused, he pulled them partially off. Lucy told Officer Marshall, "he tried to what you call it me."[4] Lucy also said that he had his hands between her legs. Officer Marshall recounted Lucy's statement in full at trial.[5]

Officer Marshall also testified that Lucy was not hysterical nor was she crying, but that her hair was messed and had leaves in it, that she appeared nervous and scared, and that her eyes were red.

Dr. Mark Hopkins, a physician with the Indian Health Service, examined Lucy at about 8:20 p. m. on the night of the assault. During his examination the doctor elicited a series of statements from Lucy concerning the cause of her injuries. Dr. Hopkins was only aware that Lucy was allegedly a rape victim and was not told of the details surrounding the assault. During the examination, in response to questions posed by the

---

3. At trial this statement was objected to as inadmissible hearsay. The objection was overruled and the issue is not raised on appeal.

4. This statement was revealed during cross-examination by defendant's counsel.

5. Officer Marshall testified that Lucy did not spontaneously start to describe the incident but, in a halting manner, conveyed the facts as detailed above.

doctor, Lucy told Dr. Hopkins she had been drug into the bushes, that her clothes, jeans and underwear, were removed and that the man had tried to force something into her vagina which hurt. She said she tried to scream but was unable because the man put his hand over her mouth and neck.[6] The doctor, over objection, repeated Lucy's statement at trial.

Dr. Hopkins' examination also revealed that there was a small amount of sand and grass in the perineal area but not in the vagina. He also found superficial abrasions on both sides of Lucy's neck and testified that they were consistent with someone grabbing her but qualified his statement by adding that he could not absolutely determine that they were so caused. Dr. Hopkins also testified that there was no physical evidence of penetration, the hymen was intact and no sperm was located.

Lucy was able to add little and could only partially confirm the above record at trial. Lucy, a nine–year–old, was able to answer a number of preliminary questions demonstrating her ability to understand and respond to counsel but was unable to detail what happened after she was assaulted by the defendant. She did testify that she remembered something happening near the bushes and that a man had pushed her

down. Lucy also said at trial that the man told her if she "didn't shut up he would choke me." In response to a series of leading questions she confirmed that the man had put his hand over her neck, hit her on the side of the face, held her down, taken her clothes off and that Mae Small Bear had scared the man, making him leave.[7] On cross–examination defense counsel did not explore any of the substantive issues, nor did he examine Lucy concerning the statement she made to Dr. Hopkins and Officer Marshall, although he had the opportunity.

### A. Dr. Hopkins' Testimony

The defendant raises ten issues on appeal, which he alleges require a new trial. We separately examine these contentions.

Defendant challenges the admission of statements made by Lucy to Dr. Hopkins during his examination. The prosecution offered this testimony admittedly as hearsay but within the exception expressed in Rule 803(4). The rule states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> \* \* \* \* \* \*
>
> (4) \* \* \* Statements made for purposes of medical diagnosis or treatment

---

**6.** Out of the presence of the jury, the doctor testified that he first asked Lucy "what happened" and she didn't answer. He asked whether she was in any pain and she pointed to her vaginal area. He asked if she hurt anywhere else and she didn't answer. Dr. Hopkins again asked "what happened" and Lucy said she had been drug into the bushes. The doctor then asked if the man "had taken her clothes off." She said yes, and then related the facts set out above. Dr. Hopkins testified that he was not "badgering" the patient, nor "dragging information out," but was asking "simple questions."

**7.** The following is a representative sample of the prosecutor's direct examination of Lucy:
Q What did the man do when he pushed you down, Lucy?
A (Long hesitation)
Q What did he do?
A (Long hesitation)
Q Did he hurt you any place?
A (Long hesitation)
Q Do you remember that?
A (Long hesitation)

Q Where did he put his hand, did he put his hand on your neck?
A Yes
Q Did you get hit on the side of the face?
A Yes.
Q When he pushed you down, did he hold you down?
A Yes.
Q Did you start crying?
A Yes.
THE COURT: As much as you can, phrase your questions in a way to avoid any unnecessary leading.
Q What else happened when he had you down, Lucy; did he say anything to you, do you remember?
A (Long hesitation)
Q What did he say to you, can you tell me? Tell me what he said?
A (Long hesitation)
Q Could you do that for me?
A Yes.
Q Okay, tell me what he said?
A If I didn't shut up he would choke me.

and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Fed.R.Evid. 803(4). The defendant argues that the questions asked by Dr. Hopkins and the information received in response to those questions were not "reasonably pertinent" to diagnosis or treatment. The defense stresses Dr. Hopkins' question in which he asked Lucy whether the man had taken her clothes off and suggests that this was asked by one in the role of an investigator, seeking to solve the crime, rather than a doctor treating or diagnosing a patient. The defendant also asserts that the doctor's examination would have been the same whether or not this extra information had been received. The defense argues that this point supports his claim that the questions were not pertinent to treatment or diagnosis because they had no affect on the doctor's examination. Lastly, the defendant urges that the doctor was employed for the specific purpose of qualifying as an expert witness and as such his testimony should be more suspect.

It is clear that Rule 803(4) significantly liberalized prior practice concerning admissibility of statements made for purposes of medical diagnosis or treatment. *See* Notes of Advisory Committee on Proposed Rules, Rule 803, 28 U.S.C.A. p. 585–86 (West 1975); 11 Moore's Federal Practice § 803(4)[4] (1976); 4 Weinstein & Berger, Weinstein's Evidence 803–125 (1979). Rule 803(4) admits three types of statements: (1) medical history, (2) past or present sensations, and (3) inception or general cause of the disease or injury. All three types are admissible where they are "reasonably pertinent to diagnosis or treatment." The rule changed prior law in two main points. First, the rule adopted an expansive approach by allowing statements concerning past symptoms and those which related to the cause of the injury. Second, the rule abolished the distinction between the doctor who is consulted for the purpose of treatment and an examination for the purpose of diagnosis only; the latter usually refers to a doctor who is consulted only in order to testify as a witness.[8] *See* Weinstein & Berger, *supra*, at 803–125.

Lucy's statements fall primarily within the third category listed by 803(4).[9] The key question is whether these statements were reasonably pertinent to diagnosis or treatment. The rationale behind the rule has often been stated. It focuses upon the patient and relies upon the patient's strong motive to tell the truth because di-

---

**8.** This is the first Eighth Circuit opinion to consider the effect of 803(4) on its pre–1975 case law. This circuit had followed the majority rule which prevented admission of testimony concerning the cause of the injury as not connected with treatment and excluded statements made to a physician who examined the patient solely for the purpose of testifying. *Aetna Life Ins. Co. v. Quinley*, 87 F.2d 732, 734 (8th Cir. 1937) (statements regarding cause of injury); *United States v. Nickle*, 60 F.2d 372, 373–74 (8th Cir. 1932) (treating and non–treating distinction). *See generally United States v. Cochran*, 475 F.2d 1080, 1083–84 (8th Cir.), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *Lycon v. Walker*, 279 F.2d 478, 484 (8th Cir. 1960); *Krug v. Mutual Benefit Health & Accident Ass'n*, 120 F.2d 296, 299 (8th Cir. 1941); Annot., 37 ALR3d 778 (1971). These cases are no longer controlling but they may provide persuasive authority within the boundaries of 803(4) when analyzing whether statements are reasonably pertinent to diagnosis or treatment. Some courts had also held that a physician could repeat a patient's statement regarding medical history or past symptoms for the limited purpose of explaining the basis of an opinion and not in order to prove the truth of the out–of–court declarations. This distinction was likewise rejected by the federal rules. Notes of Advisory Committee on Proposed Rules, Rule 803, 28 U.S.C.A. p. 585–86 (West 1975).

**9.** Dr. Hopkins testified that Lucy said she was experiencing pain in her vaginal area. This expression of a present symptom falls within the second category of 803(4) and would also be excepted from the hearsay rule under rule 803(3) covering a then existing physical condition. Fed.R.Evid. 803(3). The remainder of Lucy's statement concerns the general character and nature of the cause of the injury. Because of the result we reach in this case, it is not necessary to discuss this distinction at length.

agnosis or treatment will depend in part upon what the patient says. It is thought that the declarant's motive guarantees trustworthiness sufficiently to allow an exception to the hearsay rule. *See Meaney v. United States*, 112 F.2d 538 (2d Cir. 1940). Judge Weinstein, in his treatise, suggests another policy ground. He writes that "a fact reliable enough to serve as the basis for a diagnosis is also reliable enough to escape hearsay proscription." Weinstein & Berger, *supra*, at 803–129. This principle recognizes that life and death decisions are made by physicians in reliance on such facts and as such should have sufficient trustworthiness to be admissible in a court of law. This rationale closely parallels that underlying rule 703 and suggests a similar test should apply, namely–is this fact of a type reasonably relied upon by experts in a particular field in forming opinions. *See* Fed. R.Evid. 703 (Basis of Opinion Testimony by Experts). Thus, two independent rationales support the rule and are helpful in its application. A two–part test flows naturally from this dual rationale: first, is the declarant's motive consistent with the purpose of the rule; and second, is it reasonable for the physician to rely on the information in diagnosis or treatment.

We find no facts in the record to indicate that Lucy's motive in making these statements was other than as a patient seeking treatment. Dr. Hopkins testified that the purpose of his examination was two–fold. He was to treat Lucy and to preserve any evidence that was available. There is nothing in the content of the statements to suggest that Lucy was responding to the doctor's questions for any reason other than promoting treatment. It is important to note that the statements concern what happened rather than who assaulted her. The former in most cases is pertinent to diagno-

sis and treatment while the latter would seldom, if ever, be sufficiently related.[10] *See United States v. Nick*, 604 F.2d 1199, 1201–02 (9th Cir. 1979). All of Lucy's statements were within the scope of the rule because they were related to her physical condition and were consistent with a motive to promote treatment. The age of the patient also mitigates against a finding that Lucy's statements were not within the traditional rationale of the rule. The trial court placed special emphasis on this factor and we likewise find that it is important to our holding.

During an extensive examination outside the presence of the jury, Dr. Hopkins explained in detail the relevancy of his questions to the task of diagnosis and treatment. He testified that a discussion of the cause of the injury was important to provide guidelines for his examination by pinpointing areas of the body to be examined more closely and by narrowing his examination by eliminating other areas. It is not dispositive that Dr. Hopkins' examination would have been identical to the one he performed if Lucy had been unable to utter a word. The doctor testified that his examination would have been more lengthy had he been unable to elicit a description of the general cause, although he stated the exam would have been basically the same. The fact that in this case the discussion of the cause of the injury did not lead to a fundamentally different exam does not mean that the discussion was not pertinent to diagnosis. It is enough that the information eliminated potential physical problems from the doctor's examination in order to meet the test of 803(4). Discovering what is not injured is equally as pertinent to treatment and diagnosis as finding what is injured. Dr. Hopkins also testified, in response to specific questions from the court,

---

**10.** The advisory committee notes on 803(4) provide that statements as to fault would not ordinarily qualify. The notes use this example: "a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light." Advisory Committee Notes, *supra*, at 585. Another example concludes that a statement by a patient that he was shot would be admissible but a statement that he was shot by a white man would not. *United States v. Narciso*, 446 F.Supp. 252, 289 (E.D.Mich.1977). And the fact that a patient strained himself while operating a machine may be significant to treatment but the fact that the patient said the machine was defective may not. *See Stewart v. Baltimore & O. R. Co.*, 137 F.2d 527, 530 (2d Cir. 1943).

that most doctors would have sought such a history and that he relied upon Lucy's statements in deciding upon a course of treatment.[11]

■ In light of this analysis we hold that it was not an abuse of discretion to admit the doctor's testimony. A recent Ninth Circuit case concerning closely analogous facts supports this result. *United States v. Nick, supra,* 604 F.2d at 1201–02. In *Nick* a three–year–old boy was sexually assaulted by the defendant. At trial the examining physician was allowed under rule 803(4) to repeat the child's description of the assault including the victim's statements concerning the cause of the injury while omitting any comments about the identity of the assailant. *United States v. Nick, supra,* 604 F.2d at 1201–02. *See also O'Gee v. Dobbs Houses, Inc.,* 570 F.2d 1084, 1089 (2d Cir. 1978) (rule 803(4) clearly permits the admission into evidence of what the plaintiff told the physician about her condition and its origin so long as it was relied upon by the physician in formulating his opinion); *Britt v. Corporacion Peruana De Vapores,* 506 F.2d 927, 930–31 (5th Cir. 1975); *United States v. Narciso,* 446 F.Supp. 252, 289–92 (E.D.Mich.1977).

### B. Officer Marshall's Testimony

The defendant also asserts that it was prejudicial error to admit the hearsay testimony of Officer Marshall pursuant to 803(2). The rule allows admission of hearsay, otherwise competent, that is a "statement relating to a startling event or condi-

tion made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2). Officer Marshall interviewed Lucy at 7:15 p. m.; somewhere between forty–five minutes and one hour, fifteen minutes after the assault. The defense argues that Lucy was no longer "under the stress of excitement caused by the event" when she talked to Officer Marshall. The defendant emphasizes that Lucy was described as quiet and not crying, and that she had not made any spontaneous statements since immediately following the assault. He also asserts that Lucy's statements were not spontaneous because they were in response to an inquiry and were the product of reasoned reflection fostered by conversations between herself and her companions following the assault. The government, in response, stresses that Officer Marshall described Lucy as scared and nervous with her eyes still red from crying and her hair was still messed from the assault.

■ The lapse of time between the startling event and the out–of–court statement although relevant is not dispositive in the application of rule 803(2). *Garcia v. Watkins,* 604 F.2d 1297, 1300 (10th Cir. 1979); *see* McCormick's Handbook of the Law of Evidence § 297 (2d ed. 1972). Nor is it controlling that Lucy's statement was made in response to an inquiry. *United States v. Glenn,* 473 F.2d 191, 194–95 (D.C. Cir.1972); *McCurdy v. Greyhound Corporation,* 346 F.2d 224, 226 (3d Cir. 1965).[12]

---

**11.** Judge Weinstein approached the problem as follows:

> Much depends on the doctor's analysis. The doctor may or may not need to know that his patient was struck by a train and what caused him to fall under the train since dizziness before the accident may bear on diagnosis. A doctor consulted after the patient was involved in an automobile accident may need to know that the accident was precipitated when the patient fainted while driving. Since doctors may be assumed not to want to waste their time with unnecessary history, the fact that a doctor took the information is prima facie evidence that it was pertinent. Courtroom practice has tended to let in medical records and statements to

> nurses and doctors fairly freely, leaving it to the jury to decide probative force.

Weinstein & Berger, *supra,* at 803‑130 (footnotes omitted). It is not necessary to find, and we do not hold in this case, that the fact that the doctor took the information is prima facie evidence that it was pertinent. Rather, we conclude that a close examination of the facts and circumstances in each case is required.

**12.** Rules 803(1) and (2) are codifications of the exceptions developed in the federal courts prior to the enactment of the Federal Rules of Evidence. Prior to the adoption of the rules, these two exceptions were often grouped together and referred to as the "res gestae" exception.

Rather, these are factors which the trial court must weigh in determining whether the offered testimony is within the 803(2) exception. Other factors to consider include the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event and the subject matter of the statements. In order to find that 803(2) applies, it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation. *See United States v. Knife,* 592 F.2d 472, 481 n.10 (8th Cir. 1979); *United States v. Moss,* 544 F.2d 954, 958 (8th Cir. 1976), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 822, 50 L.Ed.2d 797 (1977); *United States v. Merrill,* 484 F.2d 168, 170–71 (8th Cir.), *cert. denied,* 414 U.S. 1077, 94 S.Ct. 594, 38 L.Ed.2d 484 (1973); *United States v. Fountain,* 449 F.2d 629, 631–32 (8th Cir. 1971), *cert. denied,* 405 U.S. 929, 92 S.Ct. 981, 30 L.Ed.2d 802 (1972); Weinstein & Berger, *supra,* at 803–84.

Determination of this issue is a close question. There is testimony that the declarant was calm and unexcited. In contrast the same witness described Lucy as nervous and scared. Testimony from other sources suggested that Lucy had struggled with the defendant, that he had threatened her with serious harm and that he had unsnapped and pulled down her jeans. The stress and fear that such an occurrence would impose upon a young girl cannot be discounted. Officer Marshall testified that Lucy did not give a detailed narrative but spoke in short bursts about the incident. The officer emphasized at trial that she did not ask Lucy suggestive questions but merely reported what Lucy said. The officer only asked Lucy, "what happened?"

■ We note at this point that our role is somewhat limited. We are not to substitute our judgment for that of the district court. We are only to reverse where we find that the admission of this testimony constituted an abuse of discretion. *United States v. Moss, supra,* 544 F.2d at 960; *Control Data Corporation v. International Business Machines Corporation,* 421 F.2d 323, 326 (8th Cir. 1970) (A trial court has great latitude in ruling on the admissibility of evidence.); *Burger Chef Systems, Inc. v. Govro,* 407 F.2d 921, 930 (8th Cir. 1969) (The discretion of the trial court in the admission of evidence, when exercised within normal limits, should not be disturbed on appeal.); *General Insurance Company of America v. Hercules Construction Company,* 385 F.2d 13, 24 (8th Cir. 1967).

■ Applying this standard, we cannot say that the district court abused its discretion. The single question "what happened" has been held not to destroy the excitement necessary to qualify under this exception to the hearsay rule. *People v. Damen,* 28 Ill.2d 464, 193 N.E.2d 25, 30 (1963); *People v. Bush,* 11 Ill.App.3d 31, 295 N.E.2d 548, 552 (1973). *See* Annot., 80 ALR3d 369, 372 (1977). A lapse of about one hour has also been held not to remove the evidence from the 803(2) exception, especially where the declarant is a young child. *Wheeler v. United States,* 211 F.2d 19, 24 (D.C. Cir.), *cert. denied,* 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140 (1954); *see* Annot., 89 ALR3d 102 (1979). It also has been noted that the lack of recall may indicate that the declarant was under stress at the time of the statement. *Hilyer v. Howat Concrete Co., Inc.,* 578 F.2d 422, 426 (D.C. Cir. 1978). It is a truism to state that each of these cases must be decided on its own circumstances. We find that in these circumstances considering the surprise of the assault, its shocking nature and the age of the declarant, it was not an abuse of discretion for the trial court to find that Lucy was still under the stress of the attack when she spoke to Officer Marshall. It was not unreasonable, in this case, to find that Lucy was in a state of continuous excitement from the time of the assault. *See United States v. Moss, supra,* 544 F.2d at 958; *see* Annot., 48 ALR Fed 451 (1980).

■ Even if Officer Marshall's testimony concerning Lucy's statement was found to be inadmissible hearsay under 803(2), it is

---

*See Hilyer v. Howat Concrete Co., Inc.,* 578 F.2d 422, 425 (D.C.Cir.1978). Therefore, opinions regarding pre–1975 practice are still good law.

our view that the evidence was at most cumulative and therefore constituted harmless error. *See United States v. Moss, supra,* 544 F.2d at 960; 3 Wright and Miller, Fed. Practice and Procedure, Criminal § 854 (1969). Officer Marshall was preceded on the stand by Dr. Hopkins, Pam Lunderman and Lucy. The officer's testimony was substantially a restatement of the facts brought into evidence by those three witnesses. We are convinced that the error, if there was error, did not influence the jury or had a very slight effect. *See Kotteakos v. United States,* 328 U.S. 750, 760–65, 66 S.Ct. 1239, 1245, 90 L.Ed. 1557 (1946); *United States v. Straughan,* 453 F.2d 422, 427 (8th Cir. 1972) (the evidence must have exerted a "substantial influence;" citing *Kotteakos* ). In this case the defense presented no evidence to contradict the officer's testimony while it was supported, at least partially, by three other witnesses.

### C. Confrontation Clause

The defense also suggests that the admission of the two hearsay statements violates the confrontation clause. U.S.Const. Amend. VI.[13] This case differs from the usual confrontation–hearsay case in that the declarant was a witness at trial and was subject to cross–examination. *See California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970). It has been recognized, however, that even though a declarant is available to testify, the confrontation clause protection may be called into question because the declarant is too young to be subjected to a thorough cross–examination as envisaged by the constitution. *United States v. Nick, supra,* 604 F.2d at 1202 (a two–year–old victim's hearsay statements to a doctor and his grandmother). This principle was also recognized in

*California v. Green* where the Court remanded the case for a determination of whether "the nature of the opportunity to cross–examine" was dispositive of the confrontation issue. *California v. Green, supra,* 399 U.S. at 168–70, 90 S.Ct. at 1940, *on remand sub nom. People v. Green,* 3 Cal. 981, 479 P.2d 998, 92 Cal.Rptr. 494 (1971). *See also Ohio v. Roberts,* —— U.S. ——, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). These cases recognize a special type of "unavailability" for purposes of the confrontation clause.

At trial Lucy was unable to repeat the statements she had made to Officer Marshall and Dr. Hopkins although she was able to provide some facts to support her earlier statements. Defense counsel cross–examined Lucy but did not ask about the assault or her statements shortly thereafter. It is difficult to conclude on this record that a more thorough cross–examination would not have provided the protections inherent in the confrontation clause. Nevertheless, assuming arguendo that Lucy was unavailable in the sense suggested by the *Nick* court, we conclude that the confrontation clause was not violated because the admitted hearsay statements, particularly those given to Dr. Hopkins, had sufficient indicia of reliability in order to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statements.[14] *See Ohio v. Roberts, supra,* —— U.S. at ——, 100 S.Ct. at 2537; *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972); *United States v. Nick, supra,* 604 F.2d at 1203–04; *McLaughlin v. Vinzant,* 522 F.2d 448, 450–51 (1st Cir.), *cert. denied,* 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975).

---

**13.** The confrontation clause and the hearsay rule protect similar, but not identical, interests. If strictly construed, the confrontation clause would prevent the use of virtually all hearsay. This result has long been rejected. *See Ohio v. Roberts,* —— U.S. ——, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Some evidence, admissible under the hearsay rules, may violate the confrontation clause. *Id.*

**14.** This conclusion would require a modification in our alternative holding concerning Officer Marshall's testimony. The assumed error would be elevated to a constitutional level. Our conclusion is the same, however. Any error is harmless beyond a reasonable doubt. *See Brown v. United States,* 411 U.S. 223, 230–32, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973); *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

## D. Lesser Included Offense Instruction

The trial court instructed the jury on assault with intent to commit rape and simple assault under section 113 and subparagraphs (a) and (e). 18 U.S.C. § 113(a), (e) (1970). The defendant requested and was denied an instruction on what he claims was a lesser included offense of the principal charge. The defense asserts that the court should have instructed the jury concerning a charge of assault by striking, beating or wounding under section 113(d). 18 U.S.C. § 113(d) (1970).

■ A defendant is entitled to a lesser included offense instruction if, but only if, the following conditions are met: (1) an appropriate instruction must be requested; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence that would justify conviction of the lesser offense; (4) the proof on the differentiating element or elements must be sufficiently in dispute that the jury may consistently find the defendant innocent of the greater offense but guilty of the lesser; and (5) a charge on the lesser offense may appropriately be requested by either the prosecution or the defense. *United States v. Scharf*, 558 F.2d 498, 502 (8th Cir. 1977); *United States v. Thompson*, 492 F.2d 359, 362 (8th Cir. 1974). The Federal Rules of Criminal Procedure state that a "defendant may be found guilty of an offense necessarily included in the offense charged * * *." Fed.R.Crim.Pro. 31(c).[15]

The second element in the criteria first outlined by the *Thompson* court is the source of disagreement here. The defense argues that section 113(d) is a lesser included offense of an assault with intent to commit rape because, in this case, an assault and battery occurred. He suggests that the elements required to prove both crimes are the same, except for the additional element of specific intent to rape which is needed under the principal charge here. We do not agree.

■ The elements of an assault to commit rape are: (1) that the defendant assaulted the prosecutrix, and (2) that the defendant committed the assault with the specific intent to commit rape. The offense of assault by striking, beating or wounding has been held by this circuit to constitute common law battery. *United States v. Knife, supra*, 592 F.2d at 482; *United States v. Stewart*, 568 F.2d 501, 504–05 (6th Cir. 1978). *See also United States v. Anderson*, 425 F.2d 330, 333 (7th Cir. 1970). Thus, a charge under section 113(d) would require that the prosecution show some form of physical contact. *See* LaFave & Scott, Handbook on Criminal Law § 80 (1972). As noted above, no physical contact or offensive touching is required in a charge of assault with intent to commit rape. Therefore, section 113(d) is not a lesser included offense because it has an element which is not an element of the greater charge.

Rule 31(c) states that the instruction is called for where the lesser offense is "necessarily" included in the greater offense. This concept is expressed in the principle that one offense is necessarily included in another if it is impossible to commit the greater without also having committed the lesser. *Virgin Islands v. Aquino*, 378 F.2d 540, 554 (3d Cir. 1967); Wright and Miller, *supra*, section 515 n.58. The above discussion demonstrates that it would be possible to commit an assault with intent to commit rape without committing a battery. *See Durns v. United States*, 562 F.2d 542, 549 (8th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977).

■ In any event, the evidence of assault with intent to commit rape was so strong it is our view that submission of a lesser included offense was not required. *United States v. Klugman*, 506 F.2d 1378, 1380–81 (8th Cir. 1974). *See United States v. Scharf, supra*, 558 F.2d at 503.

---

**15.** Although rule 31(c) is phrased permissively, it is "universally interpreted as granting a defendant a right to a requested lesser included offense instruction if the evidence warrants it." *Beck v. Alabama*, —— U.S. ——, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

### E. Equal Protection Challenge

The district court offered to instruct the jury on a claimed lesser included offense under South Dakota law, sexual contact with a child under fifteen. S.D. Codified Laws §§ 22–22–7, 22–22–7.1 (1979) (child molestation).[16] Defense counsel rejected the offer contending that the district court was without jurisdiction to issue the instruction. The defendant asserts that the jurisdictional scheme embodied in 18 U.S.C. § 1152 and § 1153 is a denial of equal protection because a non–Indian would be entitled to such an instruction while an Indian defendant is not.[17] The defendant claims that the district court's offer to use the instruction does not remedy the constitutional infirmity.

It is not an exaggeration to describe the jurisdictional scheme defining the role of federal courts regarding Indian criminal law as complex. Four statutes outline the framework. Section 1152[18] extends the general criminal laws of the federal government to Indian country with the exception that this extension of federal power does not reach, *inter alia*, crimes of Indian against Indian where the Indian has been punished under local law of the tribe, or where by treaty stipulation exclusive jurisdiction is reserved to the tribe. Section 1153,[19] the Major Crimes Act, covers the exceptions in section 1152 and grants federal jurisdiction to certain listed crimes committed by one Indian against another Indian if committed within Indian country. Section 3242[20] states that those charged

16. The South Dakota statutes provide:
 Sexual contact with child under fifteen · Felony or misdemeanor. Any person, fifteen years of age or older, who knowingly engages in sexual contact with another person, other than his spouse when such other person is under the age of fifteen years is guilty of a Class 3 felony. If the actor is less than three years older than the other person, he is guilty of a Class 1 misdemeanor.
 S.D. Codified Laws § 22–22–7 (1979).
 Sexual contact defined. As used in § 22-22-7, the term, "sexual contact," means any touching, not amounting to rape, of the breasts of a female or the genitalia of any person with the intent to arouse or gratify the sexual desire of either party.
 S.D. Codified Laws § 22–22–7.1 (1979).

17. The equal protection clause of the Fourteenth Amendment is made applicable to the federal government through the due process clause of the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

18. 18 U.S.C. § 1152 provides:
 Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
 This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

19. 18 U.S.C. § 1153 provides:
 Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.
 As used in this section, the offenses of burglary and incest shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.
 In addition to the offenses of burglary and incest, any other of the above offenses which are not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

20. 18 U.S.C. § 3242 provides:
 All Indians committing any offense listed in the first paragraph of and punishable under section 1153 [18 USCS § 1153] (relating to offenses committed within Indian country) of this title shall be tried in the same courts and in the same manner as are all other persons committing such offense within the exclusive jurisdiction of the United States.

under section 1153 "shall be tried in the same * * * manner as are all other persons committing such offense within the exclusive jurisdiction of the United States." The Assimilative Crimes Act, section 13,[21] makes state law applicable when a crime committed in Indian country is not defined by federal criminal statutes.

It is defendant's position that the child molestation instruction is not available because it is not one of the specific crimes listed in section 1153. He asserts that if the defendant in this case were a non–Indian then section 1152 would apply and, consequently, section 13 could then be invoked to allow an instruction of a crime defined by South Dakota law. In contrast, section 1153, by its terms, restricts the scope of the charges and precludes use of section 13. The defendant argues only those fourteen crimes enumerated in the statute are within the court's jurisdiction. We find this analysis an unnecessarily narrow reading of the statute and of the applicable case law. We rely primarily on *Keeble v. United States*, 412 U.S. 205, 216, 93 S.Ct. 1993, 1999, 36 L.Ed.2d 844 (1973). *See also United States v. Pino*, 606 F.2d 908, 914–15 (10th Cir. 1979); *Felicia v. United States*, 495 F.2d 353, 354–55 (8th Cir.), *cert. denied*, 419 U.S. 849, 95 S.Ct. 88, 42 L.Ed.2d 79 (1974).

In *Keeble* the United States Supreme Court considered the issue of "whether an Indian prosecuted under the [Major Crimes] Act is entitled to a jury instruction on a lesser included offense where that lesser offense is not one of the crimes enumerated in the Act." *Keeble v. United States, supra*, 412 U.S. at 206, 93 S.Ct. at 1994. The defendant in *Keeble* was charged with as-

sault with intent to commit serious bodily injury under section 1153.[22] The trial court refused to instruct the jury on a lesser included offense of simple assault reasoning that because simple assault is not enumerated in the Act, it is within exclusive tribal jurisdiction. *Id.* The Court held that the simple assault instruction should have been given and reversed the conviction. Justice Brennan, writing for the Court, concluded:

Finally, we emphasize that our decision today neither expands the reach of the Major Crimes Act nor permits the Government to infringe the residual jurisdiction of a tribe by bringing prosecutions in federal court that are not authorized by statute. We hold only that where an Indian is prosecuted in federal court under the provisions of the Act, the Act does not require that he be deprived of the protection afforded by an instruction on a lesser included offense, assuming of course that the evidence warrants such an instruction.

*Keeble v. United States, supra*, 412 U.S. at 214, 93 S.Ct. at 1998 (footnote omitted). Thus, the Court found that while an indictment charging a simple assault could not be brought in federal court, it was improper to refuse an instruction on the same charge where the facts warranted such an instruction and the original indictment was based upon one of the crimes enumerated in section 1153. *See Keeble v. United States, supra*, 412 U.S. at 217, 93 S.Ct. at 2000 (Stewart, J., dissenting).

The defense attempts to distinguish *Keeble* by asserting that simple assault is a federal crime defined by 18 U.S.C. § 113(e)[23] and claims that a state defined

---

**21.** 18 U.S.C. § 13 provides:

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

**22.** Section 1153 refers to an "assault resulting in serious bodily injury." This variance between the statute and the indictment was not important to the Court's decision. It is assumed that the initial charge was within the jurisdictional grant of section 1153. *See Keeble v. United States, supra*, 412 U.S. at 213 n.13, 93 S.Ct. at 1998 n.13.

**23.** 18 U.S.C. § 113(e) provides:

Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

crime is not within the ambit of *Keeble*. The defense adds that rule 31(c)[24] when it speaks of "offenses" refers only to federal offenses. We disagree.

The *Keeble* Court did not cite section 113(e) nor did it discuss the jurisdictional base for the lesser included offense instruction. It emphasized, however, fairness to the defendant stating " * * * we can hardly conclude that Congress intended to disqualify Indians from the benefits of a lesser offense instruction, when those benefits are made available to any non–Indian charged with the same offense." *Keeble v. United States, supra,* 412 U.S. at 212, 93 S.Ct. at 1997. The significance of the *Keeble* decision was that simple assault, although not listed in section 1153, was still required to be given as a lesser included offense instruction if proper under the facts and if requested by counsel. We think the same analysis applies here. The defendant's reference to federal offenses is the same argument espoused by the dissent in *Keeble. Keeble v. United States, supra,* 412 U.S. at 216, 93 S.Ct. at 1999. It was not persuasive to the *Keeble* majority, nor is it convincing now.

Section 113(e) is not a jurisdictional grant but merely delineates punishment. Further, section 3242 provides that defendants charged under section 1153 shall be tried in the same manner as are all other persons committing the same offense within federal jurisdiction. This also supports a finding that any lesser included offense based on state law should be available to Indians if a non–Indian could successfully request it. *See Keeble v. United States, supra,* 412 U.S. at 212, 93 S.Ct. at 1997. In *Pino,* the Tenth Circuit held that an instruction based on a New Mexico statute covering careless driving was proper in a federal prosecution charging the defendant with manslaughter under section 1153. *United States v. Pino, supra,* 606 F.2d at 914–15. The *Pino* court similarly relied upon *Keeble* and a corresponding statutory interpretation.

■ Our conclusion is that an instruction based upon the South Dakota statute was within the jurisdictional power of the district court, but because the defense did not request the instruction, and in fact rejected the district court's offer, the defendant was not entitled to the instruction.[25] *See* D. *supra.* Therefore, the defendant's right to equal protection is not violated because the instructions available to an Indian and a non–Indian in these circumstances are the same.[26]

### F. Sufficiency of Evidence to Sustain the Verdict of Guilty

We have already set out in detail the evidence which amply supports the verdict of guilt. The testimony of Mike Dillon, Steve Mizner and Mae Small Bear of what

---

(e) Simple assault, by fine of not more than $300 or imprisonment for not more than three months, or both.

**24.** *See* text accompanying note 15, *supra.*

**25.** We do not suggest that we have determined that section 22–22–7 is a lesser included offense of an assault with intent to commit rape. We need not now decide the question.

**26.** The government also argues that the child molestation instruction was outside the jurisdiction of the district court. They assert that the federal government has "pre–empted the field" with its statutes proscribing rape and carnal knowledge of a female under sixteen years of age. 18 U.S.C. §§ 2031, 2032 (1970). The Supreme Court has applied this doctrine by preventing a federal prosecution based upon an Arizona "statutory rape" law utilizing the Assimilative Crimes Act, section 13, as a jurisdictional base. *See* note 21, *supra.* The Arizona statute set the age of consent at eighteen while the federal law was the same as it is today. The Court held that the charge could not be based upon the state law where the exact conduct alleged in the indictment was made unlawful by federal statute. *Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). *See also United States v. Butler,* 541 F.2d 730 (8th Cir. 1976). The doctrine of these two cases is not applicable here. The conduct made unlawful by the federal statute is not the same as that covered by the South Dakota law. Neither a statutory rape charge nor a charge of rape are identical to, or generically the same as, the conduct made punishable by section 22–22–7. *See* note 16, *supra.* Also, we note the issue of a lesser included offense is distinguishable from the issue involved in *Williams* which concerned an original indictment.

they observed at the scene of the assault and appellant's actions immediately thereafter leave little doubt as to what occurred and need not be repeated. Dr. Hopkins' testimony concerning his examination of Lucy and the history taken in connection therewith corroborate the witnesses' description of the nature of the assault.

■ The gist of appellant's contention is that because of his state of intoxication he could not form the specific intent to commit rape required to establish his guilt. There was conflicting expert testimony concerning appellant's ability to form the specific intent to commit rape. This was an issue to be resolved by the jury. It was for it to consider not only the testimony of the experts, but all the other evidence in the case bearing on the issue of intent. Its finding of guilt is abundantly supported by the evidence.

## G. Other Issues

■ The defendant raises a number of other issues which require only a brief discussion. The appellant contends that it was prejudicial error to admit the knife found underneath the defendant at the time of his arrest. The defendant argues that the use of knives was common in the Dillon household to "lock" doors and the prejudice fostered by its admission outweighed any probative value concerning the defendant's ability to form a specific intent. We conclude that the evidence of defendant's guilt was strong and therefore the admission of the knife at most was not prejudicial error. *See United States v. Peltier*, 585 F.2d 314, 325–28 (8th Cir. 1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979).

■ The defendant also asserts that the trial court's instruction to the jury that it could consider the intentional flight of the defendant immediately after the crime in determining guilt was error. The flight instruction was justified. Testimony from Mae Small Bear indicated that the defendant, when he saw Small Bear approach, tried to hide Lucy, ran toward the end of the bushes and then across the street to the Dillon house. *See United States v. White*, 488 F.2d 660, 661–62 (8th Cir. 1973).

■ Defendant also urges that the court erred in denying his motion for mistrial when the prosecutor cross–examined his witness Jeanne Brave concerning a previous conviction when the witness was a juvenile. The record discloses that the government counsel asked the witness whether she had ever been convicted of a felony. She responded, "when I was fourteen years old." The court ordered the question and answer stricken and directed the jury to disregard the same. Evidence of juvenile adjudications is generally not admissible. The court may allow evidence of a juvenile adjudication of a witness other than the defendant under certain circumstances under Fed.R. Evid. 609(d). Such a determination was not made by the court. However, the error was harmless. The witness' testimony concerned defendant's drinking habits and at most was cumulative.

■ Following the selection of the jury, but before the presentation of evidence, one of the jurors indicated to the clerk that her daughter's friend had been a rape victim and that her daughter had been a witness at the trial. The court had covered this topic in its voir dire but the juror had forgotten the incident. After an in–chambers examination of the juror, defendant's counsel moved for a mistrial. The court offered to seat the alternate juror but the defendant limited his motion to one for mistrial. We hold that he waived his right to raise this issue on appeal.

■ We also find that the trial court did not abuse its discretion by allowing the government to ask the prosecutrix leading questions. *See* note 7 *supra*. The victim's hesitancy to testify concerning this matter was understandable. *See United States v. Littlewind*, 551 F.2d 244, 245 (8th Cir. 1977).

We conclude that the defendant received a fair trial, no prejudicial error occurred, and that the jury's finding of guilt beyond a reasonable doubt is amply supported by the evidence.

Affirmed.

HEANEY, Circuit Judge, concurring:

I concur in the majority opinion on the grounds that the evidence of assault with

intent to commit rape was so strong that submission of either simple assault or assault by striking, beating or wounding was not required.

BRIGHT, Circuit Judge, dissenting:

Although I would concur in all other parts of the majority opinion, I cannot agree with the court's resolution of the lesser included offense issue. Because I believe the trial court committed prejudicial error in refusing to instruct the jury as to the offense of assault by striking, beating, or wounding, I would reverse the conviction and remand for a new trial.

The majority recognizes that assault by striking, beating, or wounding, 18 U.S.C. § 113(d) (1976), is the equivalent of common law battery. See *United States v. Knife*, 592 F.2d 472, 482 (8th Cir. 1979); *United States v. Big Crow*, 523 F.2d 955, 958 (8th Cir. 1975), cert. denied, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 337 (1976); *United States v. Stewart*, 568 F.2d 501, 504–05 (6th Cir. 1978). This simple battery is the proper lesser included offense whenever the Government proves a charge of assault with a specific intent by evidence of actual physical contact. See *United States v. Knife*, supra, 592 F.2d at 482.

As used in 18 U.S.C. § 113, the term assault has a broader meaning than at common law. "From the language of § 113, it is manifest that Congress employed the word 'assault' to include battery." *United States v. Eades*, 615 F.2d 617, 622 n.5 (4th Cir. 1980); see *United States v. Chaussee*, 536 F.2d 637, 644 (7th Cir. 1976); accord *United States v. Anderson*, 425 F.2d 330, 333 (7th Cir. 1970). Under 18 U.S.C. § 113(a) where there is uncontested evidence of a battery, an assault with intent to commit rape is in effect a battery with the specific intent to commit rape. In such a case, the crime of simple battery is a necessarily included lesser offense.

Because assault by beating is a lesser included offense of assault with intent to commit rape, defendant would be entitled to an instruction if

the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense[.] [*United States v. Brischetto*, 538 F.2d 208, 209 (8th Cir. 1976).]
Accord *United States v. Klugman*, 506 F.2d 1378, 1380 (8th Cir. 1974); *United States v. Thompson*, 492 F.2d 359, 362 (8th Cir. 1974). See also *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973).

In the instant case the element of "intent to commit rape" differentiates the two offenses. Iron Shell testified that he was drunk and could not remember the assault. The proof of striking and beating of the victim remained undisputed.

If the jury could conclude that the Government did not prove an intent to commit rape, the choice of the lesser included offense under the facts was that of assault by striking, beating, or wounding. The simple assault instruction given by the district court did not fit the undenied facts and therefore did not afford the jury a proper choice of a lesser included offense. The failure to instruct on this lesser included offense constituted error. Under the record in this case, I believe that error prejudiced the defendant.